410 F.Supp. 528 (1976)
In the Matter of Roy G. HICKMAN, Bankrupt.
The CALLAWAY BANK, Plaintiff,
v.
Roy G. HICKMAN, Defendant.
No. 74 B 1 C.
United States District Court, W. D. Missouri, C. D.
April 5, 1976.
*529 James D. Mariea, Whitlow & Riley, Fulton, Mo., for Callaway Bank.
Melvin O. Benitz, St. Charles, Mo., for defendant.

MEMORANDUM AND ORDER
ELMO B. HUNTER, District Judge.
This case is before this Court on appeal from the Order and Judgment of the Bankruptcy Judge entered on August 20, 1975 and August 25, 1975 following a trial to determine the dischargeability of a debt owed by the bankrupt. Judgment of nondischargeability was entered in favor of the plaintiff for $5,000.00. On September 18, 1975, pursuant to Rule 807 of the Bankruptcy Rules, the record was transmitted to this Court. Both parties filed briefs shortly thereafter.[1]
The Bankruptcy Judge made the following findings of fact in the Order that is now challenged here. Bankrupt, Roy G. Hickman, who is the appellant before this Court, was a masonry contractor in the Fulton, Missouri area. He was awarded a masonry subcontract for the new Fulton Building and Loan bank building in April, 1973 by the contractor for that job, Felix Doerhoff. Although there was a bid for the job slightly lower than bankrupt's, he received the job because he was known by the contractor to do "good work," whereas the low bidder was unknown to the contractor. The total contract price, including all labor and materials was $23,404.80.
On June 26, 1973, the bankrupt obtained a 60 day construction loan of $10,000 from the Callaway Bank, appellee before this Court, pledging as collateral therefor "accounts receivable of Doerhoff Const. Co. ($9,000) (Fulton B & L job) and Camp Leisure Lake ($1,200)." As of the date of that loan Hickman had received progress payments from Doerhoff totalling $14,000. Subsequent to the loan, on July 11, 1973, he received payment of $4,876.80 from Doerhoff. On August 15, 1973, upon receipt by Doerhoff of a lien waiver signed by Hickman, final payment of $3,528.00 was made by Doerhoff to the bankrupt.
The June 26, 1973 note to the Callaway Bank was not paid at maturity by the bankrupt, and weekly demand notices produced no payment. At some time after the note matured, the bank learned that Hickman had received full payment from Doerhoff on the Fulton Building and Loan job. Communications between Hickman and the bank subsequently produced payments of $3,191.95 plus interest to date on October 16, 1973 and $1,805.05 plus interest to date on December 11, 1973. Thus, an unpaid balance of $5,000 remained on the 60 day construction loan, which was now far past maturity. At this point, a bank officer told the bankrupt that the bank would be willing to extend the note over a period of months if he would secure *530 the note by a second deed of trust on his residence. Hickman refused and filed a voluntary petition of bankruptcy on January 2, 1974.
The loan of June 26, 1973 was not the first loan of this sort that Hickman had obtained from the Callaway Bank. Although neither Hickman nor the bank could say with certainty how many prior loans there had been, there was clearly a past history of dealings between the two, involving construction type loans secured by accounts receivable.
In addition to the extensive findings of fact set forth above, the Bankruptcy Judge also made a finding as to the various amounts of money and materials involved in the Fulton Building and Loan job. Bankrupt put in $4,000 of his own money when the job first started. At the time of the bankruptcy he owed $4,600 to various materialmen and suppliers on the job. Furthermore, Doerhoff had paid a lumber company over $1,600 in order to prevent a lien from being filed on the building. These figures, according to the Bankruptcy Judge, when added to the $10,000 loan from the Callaway Bank, totalled $43,600 in cash or materials received by the bankrupt for the Fulton Building and Loan job.
The Bankruptcy Judge concluded on the basis of the foregoing facts that the bankrupt willfully and maliciously converted the property of the Callaway Bank within the meaning of § 17a(2) of the Bankruptcy Act and that the debt to the bank was not, therefore, dischargeable.
Appellant-bankrupt frames the issues on appeal as follows:
"1. That the Bankruptcy Judge's findings of fact are insufficient to support any conclusions drawn from them.
2. That the plaintiffs have failed to sustain the burden of proof on dischargeability of debt.
3. That the determination as stated in the Order and Judgment is unsupported by the evidence, is contrary to the evidence, and is against the weight of the evidence and law.
4. That the Bankruptcy Judge was without authority to enter Money Judgment in violation of Rule 409B of the Bankruptcy Rules in Section 17 C 3 as the creditor did not plead or ask for a Money Judgment in the Complaint."
Federal Bankruptcy Rule 810 defines the position and power of a District Court upon the appeal of an Order or Judgment of a Bankruptcy Judge. It provides that
"Upon an appeal the district court may affirm, modify or reverse a referee's judgment or order, or remand with instructions for further proceedings. The Court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge of the credibility of the witnesses."
Upon review of the record below, in particular the transcript of the trial on the issue of dischargeability, this Court finds that the Bankruptcy Judge's findings were supported by substantial evidence and were not clearly erroneous. Shaiman v. Shear's of Affton, Inc., 387 F.2d 33 (8th Cir. 1967); Jensen v. Uhlenhopp, 508 F.2d 412 (8th Cir. 1975). Moreover, the trial transcript establishes, as do the positions of the parties on appeal, that there is no real disagreement between the parties as to the facts involved or the Bankruptcy Judge's findings of them.[2] The record on appeal *531 does not contain a designated stipulation of facts. Because the parties express no real disagreement with the Bankruptcy Judge's factual findings, however, the record before this Court is basically equivalent to a stipulation of facts. This Court can find no evidence, in its review of the record on appeal, to suggest that the Bankruptcy Judge's findings of facts, acquiesced in by the parties, are clearly erroneous.
The appellant's contentions concerning the facts found by the Bankruptcy Judge go not to their truth, but to their sufficiency to support the legal conclusions drawn therefrom.
§ 17a(2) of the Bankruptcy Act provides that a provable liability is not dischargeable if it is one resulting from willful and malicious conversion of the property of another. To be dischargeable under this statute, a debt must be both provable and a non-excepted type of conversion. The debt in question was clearly proved and there is no dispute as to its existence. Appellant urges, however, that the debt was a technical or innocent conversion which should have been discharged pursuant to the exception of Davis v. Aetna Acceptance Company, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) for certain types of conversion that are technically tortious, but deemed nevertheless to be dischargeable.
"There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one."
To determine whether the failure to turn over proceeds in the instant case constituted such an innocent and therefore dischargeable conversion, it is necessary not only to examine the prior course of dealings between the parties, but also to analyze the bankrupt's acts in light of the meaning which judicial interpretation has given "willful and malicious" in the bankruptcy context.
The evidence at trial established that there was clearly a course of prior loan transactions between Hickman and Callaway Bank, which were secured by accounts receivable due on particular construction contracts. While neither party was sure of the number of such prior transactions or produced records of them, the bankrupt testified that he had borrowed from the Callaway Bank on at least 10 prior occasions. Hickman also testified that these loans had not always been paid by actual proceeds of the accounts pledged.
Overton Harris, Executive Vice-President of the Callaway Bank, testified that there had been no difficulty with repayment of prior loans by Hickman and that in reliance on past experience with Hickman the bank had been confident that it would receive payment on the instant loan when he was paid by the contractor. On cross examination, Harris testified that although the prior notes had been paid when due, the bank had not known whether the source of the money used for repayment was actual accounts received or not.
The Bankruptcy Judge did not make a finding of fact as to the source of the repayment of the prior loans. He held, however, that even if the prior loans had been, on occasion, repaid other than from actual proceeds, there was no evidence that the bank knew of or consented to this practice, since the customary procedure was for Hickman to pay the bank after he himself had received direct payment from the contractor. Thus, the prior course of dealing did not include the creditor's knowledge or approval of the debtor's technical breach of an agreement secured by accounts receivable. Hickman's decision not to turn over accounts receivable in the present case cannot, therefore, be said to have been induced by the bank's behavior. A debtor cannot unilaterally, by occasional or regular undetected breaches, create a course of dealing that binds his creditor *532 and thus excuses his ultimate detected breach.
Furthermore, the language of § 17a(2) of the Bankruptcy Act refers to willful and malicious conversion of the property of another. Appellant's attempt to equate this language to the requirement of some sort of malevolent motive or purpose was rejected by the United States Supreme Court more than seventy years ago in Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). The definition of wilful and malicious enunciated there
". . . an act, which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception."
continues to be an accurate statement of the law and it was in terms of this definition that the Bankruptcy Judge analyzed the bankrupt's behavior. He concluded that the bankrupt had acted intentionally and knowingly in not repaying the loan and that in so doing he had caused injury to the property of the Callaway Bank. The terms of § 17a(2) had, therefore, been met.
The Bankruptcy Judge rejected the excuses for nonpayment offered by the bankrupt. He held the exception of Davis v. Aetna Acceptance Company, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) inapplicable on the facts of the instant case[3] and therefore incapable of rendering the conversion innocent or technical and thus dischargeable. The Bankruptcy Judge also rejected the arguments that partial repayment or that bankrupt apparently, according to his own testimony,[4] ultimately lost money on the Fulton Building and Loan job constituted legal excuse under § 17a(2) rendering the debt dischargeable. It was, therefore, his conclusion that the bankrupt had willfully and maliciously converted the bankrupt's property within the meaning of § 17a(2).
This Court, upon a full review of the record below, holds that the Bankruptcy Judge's legal conclusion was correct and in accord with and supported by the evidence. The findings of fact were not clearly erroneous and proper and sound legal conclusions were correctly drawn therefrom.
Rule 407 of the Bankruptcy Rules provides that at the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection.[5] Bankrupt alleges that the plaintiff failed to sustain the burden of proof as to dischargeability. *533 The sole support for this contention, however, is a citation to Davis v. Aetna Acceptance Company, supra. Simply because the Bankruptcy Judge concluded that the facts before him fell outside the Davis exception does not establish that the plaintiff failed to sustain the burden of proving that the conversion was willful and malicious. Bankrupt's contention that the plaintiff failed to sustain the burden of proving dischargeability is, therefore, without any support or merit.
Bankrupt's final contention is that the Bankruptcy Judge was without authority to enter a money judgment because the creditor did not plead or ask for money judgment in his complaint. § 17(c) of the Bankruptcy Act establishes the procedure whereby the dischargeability of a debt may be determined. 17c(3) provides
"After hearing upon notice, the court shall determine the dischargeability of any debt for which application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof."
This statute clearly empowers the Bankruptcy Judge to enter money judgment. It in no way limits the orders he may enter to those effectuating specific relief requested in a complaint.
The creditor's complaint was not contained in the record on appeal that is before this Court. However, even if it did not specifically request money judgment, its purpose clearly was to obtain such judgment should the debt be held nondischargeable. The purpose of the procedure for determining the dischargeability of debts is not to provide a forum for creditors who wish to obtain purely abstract decisions in bankruptcy law. The decision that a debt is not dischargeable is the necessary prerequisite for a money judgment on that debt. It was for that purpose that the Bankruptcy Judge entered, as it was within his power to do, a money judgment in favor of the plaintiff. The bankrupt's contention that the entry of money judgment was beyond the authority of the Bankruptcy Judge, after he had held a trial on the issue of dischargeability and found the debt nondischargeable, is supported by neither statutory authority nor reason.
For the foregoing reasons, it is therefore
ORDERED that the Bankruptcy Judge's Memorandum Opinion and Order of August 20, 1975, and Judgment of August 25, 1975, be and hereby are, affirmed.
NOTES
[1] As neither party to this action has requested oral argument on this appeal, and as it appears from the record and briefs on appeal that no oral argument is warranted, this Court will determine the issues present on appeal without oral argument from counsel, pursuant to Rule 809 of the Bankruptcy Rules.
[2] Appellant's brief makes no explicit reference to error on the part of the Bankruptcy Judge in making any finding of fact. The sole factual disagreement implicit in appellant's brief involves the manner of repayment of past loans. Appellant contends that past loans were repaid from net rather than actual proceeds of construction jobs. The Bankruptcy Judge did not, however, make a finding on this issue, because he deemed the impact of the course of prior dealings to be of the same legal significance whatever the factual source of funds for repayment of past loans. Therefore, even if the appellant's version of the facts on this issue be accepted as true, it does not render the Bankruptcy Judge's findings of facts clearly erroneous or detract from the factual support underlying his legal conclusions.
[3] Davis case cited by the bankrupt is distinguishable because the collateral in that case consisted of automobiles which the dealer-bankrupt was expected to sell at retail. The evidence supported the inference that the bankrupt had been permitted by the creditor to sell the automobiles without the creditor's consent. It was therefore held that the bankrupt's failure to account for the proceeds from the sale of only one automobile was a "technical conversion" and not a wrongful and malicious conversion under the statute. In contrast to the above, the collateral given by Hickman was the proceeds of his contract with Doerhoff, and the plaintiff in this case had no reason to anticipate that Hickman would dispose of any of it without the plaintiff's consent."
[4] With regard to bankrupt's excuses for nonpayment, the Bankruptcy Judge found them not only inadequate to render the conversion technical or unintentional, but also considered them evidence that bankrupt was not the sort of "honest debtor" for whom the Bankruptcy Act was intended to provide a fresh start. He noted that Hickman's "demeanor on the witness stand was not straight forward, his explanation for not paying the bank that "he lost $5,000 on the job" does not account for all the money received for the job; the lien waiver he gave to Doerhoff was false and finally the lack of any books or records to support his testimony." On the other hand, the Bankruptcy Judge did not find any evil or criminal intent on Hickman's part not to pay the bank. Rather he described him simply as one of those debtors who "as we all know, sooner or later get caught between the rock and the hard place."
[5] This Rule supersedes the proviso to § 14c of the Bankruptcy Act which provided for a shift in the burden of proof from the objector to the bankrupt upon the presentation of a prima facie case by the objector.