In re Harold D. McCLOUD, a/k/a David McCloud and Harold David McCloud, Debtor.

The FARMERS BANK, Plaintiff

v.

Harold D. McCLOUD, a/k/a David McCloud and Harold David McCloud, Defendant.

Bankruptcy No. 379–02375.
Adv. No. 380–0106.

United States Bankruptcy Court,
M. D. Tennessee.

Dec. 22, 1980.

Phillip A. George, Gallatin, Tenn., for plaintiff.

William P. Jones, Hendersonville, Tenn., for defendant.

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This matter is before the court upon a complaint filed by a secured creditor seeking to deny the debtor's discharge under § 727 of the Bankruptcy Reform Act of 1978 or, in the alternative, to except a state-court judgment from the debtor's discharge under § 523 of the Act.

On June 6, 1978, the debtor executed a promissory note payable to the plaintiff [hereinafter cited as the Bank] in the principal amount of $2,006. The debtor contemporaneously with the execution of the note granted the Bank a security interest in ten Holstein cows. The terms of the security agreement and of each of the other two security agreements to which reference is made below provided that the collateral was not to be moved from the location described in the agreement without the Bank's prior written consent. The agreement also prohibited the debtor from selling or offering to sell or otherwise transferring the collateral or any interest therein without the Bank's prior written consent. Finally, the agreement provided that such an unauthorized disposition of the Bank's security would constitute an event of default that entitled the Bank to immediate possession of its security.

On August 11, 1978, the debtor executed a note payable to the Bank in the principal amount of $1,246.53. The debtor also granted the Bank a security interest in six additional Holstein cows, which was evidenced by a security agreement that in form was identical to the first.

In November and December of 1978, the debtor sold the livestock in which the Bank held security interests without notifying the Bank and without securing its prior consent.

On January 12, 1979, the debtor obtained an additional loan from the Bank in the principal amount of $1,000. As evidence of the loan, the debtor executed a note payable to the Bank. The debtor also granted the Bank a security interest in nine calves, which was evidenced by a security agreement that in form was identical to the first two.

In February, the debtor sold the nine calves that secured the January loan without notifying the Bank and without obtaining its prior consent.

When the debtor defaulted on the notes, the Bank brought an action against the debtor in the General Sessions Court for Sumner County, Tennessee. That court subsequently awarded the Bank a judgment in the principal amount of $4,242.53 plus fifteen percent interest and attorney fees.

The Bank now seeks to deny the debtor's discharge or, in the alternative, to except its judgment from the discharge.

### Section 727(a)(4)(A) as a Ground for Relief

The court initially disposes of the Bank's assertion that the debtor's listing of the Bank in his schedules as an unsecured rather than as a secured creditor constituted a false oath warranting a denial of the debtor's discharge under § 727(a)(4)(A).

There is some authority for the proposition that the listing of a secured creditor in a bankruptcy petition as an unsecured creditor may be a ground for denying discharge under § 14(c)(1) of the Bankruptcy Act of 1898, as amended. *In re Collins*, 45 F.Supp. 990 (E.D.N.Y.1942). It was clear under § 14(c)(1), however, that, in order to warrant a denial of discharge, the debtor's false oath must have been made "knowingly and fraudulently." *E. g., Willoughby v. Jamison*, 103 F.2d 821 (8th Cir. 1939); *Hofstetter v. Langford*, BK No. 78–31398 (Bankr.Ct.M. D.Tenn. July 13, 1979); *Verran v. Isaacs*, 1 Bankr.Ct.Dec. 157 (E.D.Tenn.1974) (B.J.). As articulated by the court in *Willoughby v. Jamison, supra,*

> The false oath to justify a denial of a discharge must be "knowingly and fraudulently" made, that is, it "must contain all the elements involved in perjury at common law, namely, an intentional untruth in a matter material to an issue which is itself material."

103 F.2d at 823.

Section 727(a)(4)(A) continues the requirement that a false oath warranting a denial of discharge must have been knowingly and fraudulently made. There is no evidence before the court that would warrant a finding that the debtor's scheduling of the Bank as an unsecured rather than as a secured creditor was intentional. The court, therefore, denies the relief sought by the Bank under § 727(a)(4)(A).

### Section 727(a)(2)(A) as a Ground for Relief

Section 727(a)(2)(A) provides for the denial of the debtor's discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred property of the debtor's within one year before the date of the filing of the petition.

■ This court's recent decision in *Murfreesboro Production Credit Ass'n v. Harris*, Adv.Proc.No. 380–0097, 8 B.R. 88 (Bkrtcy. M.D.Tenn.1980), is dispositive of the Bank's theory that the debtor's sale of its collateral warrants a denial of the debtor's discharge. In *Harris* the court held that a transfer of property that is subject to a security interest and in which the debtor has no equity does not constitute a transfer of the debtor's property with intent to hinder, delay, or defraud a creditor under § 727 (a)(2)(A). The debtor testified that he had received "about $5,000" from the sale of the cattle, a sum that is only slightly in excess of the principal balance due the Bank. It is apparent, therefore, that the debtor had little, if any, equity in the Bank's collateral and that the debtor's transfer of this property does not constitute a transfer warranting a denial of the debtor's discharge under § 727(a)(2)(A).

### Section 523(a)(4) as a Ground for Relief

■ Section 523(a)(4) excepts from the discharge any debt for fraud or defalcation while acting in a fiduciary capacity. The Bank's assertion that the debtor's sale of collateral in contravention of the terms of the security agreements violated the Tennessee breach-of-trust statute and thus brings the Bank's debt within the scope of § 523(a)(4) is without merit in the light of this court's recent holding in *Borg-Warner*

*Acceptance Corp. v. Binkley*, BK No. 79–30291 (Bankr.Ct.M.D.Tenn. June 4, 1980), that a violation of Tennessee Code Annotated § 39–4237 (1975), which characterizes the wrongful disposition of collateral as a "fraudulent breach of trust," did not constitute a breach of the express or technical trust that was required under § 17(a)(4) of the Bankruptcy Act of 1898, as amended.

### Section 523(a)(6) as a Ground for Relief

■ Section 523(a)(6) excepts from the discharge any debt for willful and malicious injury by the debtor to the property of another.[1] The phrase "willful and malicious injury" as used in § 523(a)(6) is intended to include a wilful and malicious conversion of the property of another. *Grand Piano & Furniture Co. v. Hodges*, 4 B.R. 513, 5 Bankr.Rep. 513 (Bkrtcy.W.D.Va. 1980); 124 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini), H11,-096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

It was well established under § 17(a)(2) of the prior Act that an improper disposition of collateral was a ground for excepting a debt from the discharge if such disposition was willful and malicious. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Bank of Meeker v. McGinnis*, 586 F.2d 162 (10th Cir. 1978); *In re Nance*, 556 F.2d 602 (1st Cir. 1977); *Robertson v. Interstate Securities Co.*, 435 F.2d 784 (8th Cir. 1971); *Bank of Lexington v. Vines*, 430 F.Supp. 465 (N.D.Ala.), *aff'd*, 560 F.2d 1022 (5th Cir. 1977); *Callaway Bank v. Hickman*, 410 F.Supp. 528 (W.D.Mo.1976); *St. Paul Fire & Marine Insurance Co. v. Elliott*, 385 F.Supp. 1194 (M.D.La.1974); *Farmers & Citizens Bank v. Paskin (In re Harding)*, 2 Bankr.Ct.Dec. 472 (W.D.Wis. 1976) (B.J.). This court held under

---

1. The debtor in his post-trial brief asserts that res judicata prohibits the relitigation in this court of the nature of his debt to the Bank on the ground that the Bank's state-court judgment was based upon an action ex contractu in which the Bank did not raise as an issue the debtor's alleged willful and malicious conversion of its security. Such an assertion is ill founded in the light of the United States Su-

preme Court's decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), that bankruptcy courts may consider evidence extrinsic to the judgment and record in a prior state-court action when determining whether a debt represented by the judgment is dischargeable under § 17 of the Bankruptcy Act of 1898, as amended.

§ 17(a)(2), however, that, under the controlling Tennessee decision relative to the conversion of collateral, in order for a secured creditor to maintain a cause of action for conversion under the present status of the law in this state, it must show that the disposition of the collateral was unauthorized and that the creditor had a right to immediate possession at the time of the unauthorized disposition. *Borg-Warner Acceptance Corp. v. Binkley, supra.* This court also cited with approval the holding in *Bank of Meeker v. McGinnis, supra,* that a debt will be discharged when a secured creditor fails to take reasonable steps to protect its security interest in cattle after learning that the bankrupt is likely to sell the livestock. *Hohenwald Bank & Trust Co. v. Roberts,* BK No. 79–10081 (Bankr.Ct. M.D.Tenn. June 30, 1980).

The facts in this proceeding differ from those that were before the court in *Borg-Warner Acceptance Corp. v. Binkley, supra; Hohenwald Bank & Trust Co. v. Roberts, supra*; and *Murfreesboro Production Credit Ass'n v. Harris, supra.* In each of these prior cases, the court found that there had been no showing of a conversion because the disposition had been authorized and because the creditor had no right to immediate possession at the time of the disposition. The court's conclusions in these cases resulted from proof demonstrating that disposition of the collateral and unrestricted use of the proceeds therefrom had been permitted by the creditors either under the terms of their security agreements or as a result of a course of dealings between the parties. Neither factual showing is present in this case. Each of the three security agreements herein at issue specifically forbade the removal of the collateral from the locations specified therein without the Bank's prior written consent and prohibited the debtor from selling or offering to sell or otherwise transferring the collateral or any interest therein without the Bank's prior written consent. In addition, each of the security agreements defined default to include any unauthorized disposition of the collateral and thus granted to the Bank a right to immediate possession upon the debtor's unauthorized disposition. Moreover, the debtor was unable to prove any prior course of dealings with the Bank that would have permitted his disposition of the livestock without the Bank's consent and the unrestricted use of the proceeds therefrom.

The present facts also are unlike those present in *Bank of Meeker v. McGinnis, supra,* in which the court affirmed the denial of relief for willful and malicious conversion on the ground that the creditor had acquired knowledge of the likely disposition of its collateral by a debtor who was in the cattle trading business but had not taken any steps to protect its security. The evidence in this proceeding does not establish, as it did in *McGinnis,* that the debtor was engaged in the business of trading cattle and that the creditor was aware of the debtor's cattle trading. In addition, there is no credible evidence that the Bank knew about the debtor's disposition of its collateral until several months after the February sale. The debtor's self-serving assertion that he telephoned an unidentified woman at the Bank and informed her of the sales in November and December contradicts his testimony that he intentionally did not inform the Bank's loan officer about the sales because he feared that the officer would have denied his application for the January loan had he known of the sales.

■ Having found that the debtor's disposition of the Bank's collateral was unauthorized, that the Bank was entitled to immediate possession at the time of the disposition, and that the Bank was unaware of any likelihood that its collateral would be sold and was unaware that the debtor had in fact sold its security without complying with the terms of the security agreement, the court concludes that the debtor's disposition of the livestock constituted a conversion of the property of another for the purpose of § 523(a)(6).

A conversion within the scope of § 523(a)(6) must be shown to have been both willful and malicious. The term "willful" means deliberate or intentional.

S.Rep.No.95–989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; H.R.Rep.No.95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin. News 1978, p. 5963. The proof in this proceeding clearly establishes that the debtor's disposition of the Bank's collateral was a willful act. The debtor testified that he had read the terms of the security agreements and that he fully had understood that he was obligated not to dispose of the Bank's security without prior written consent. The debtor's deliberate and intentional sale of the Bank's security thus plainly falls within the scope of the willful act required by § 523(a)(6).

In order to come within the exception provided by § 523(a)(6), a creditor must show that the debtor's conduct was malicious as well as willful. *Liberty Nat'l Bank & Trust Co. v. Hawkins,* 6 B.R. 97, 6 Bankr. Ct.Dec. 1054 (Bkrtcy.W.D.Ky.1980); *Grand Piano & Furniture Co. v. Hodges, supra.* In order to apply the proper definition of the term "malicious," the court initially must determine whether the Congress, by adopting § 523(a)(6), intended to effect a change in the definition of the same term that had been applicable under the prior Act.

In *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), the United States Supreme Court concluded that a state-court judgment against the bankrupt for damages arising from a criminal conversation with the plaintiff's wife had been based upon a willful and malicious injury to the plaintiff's property rights and thus was not dischargeable in bankruptcy under § 17(a)(2) of the Bankruptcy Act of 1898. At issue in *Tinker* was not whether the bankrupt's conduct had been willful; the Court stated that the act had been intentional and voluntary and thus clearly had been willful for the purpose of § 17(a)(2). 193 U.S. at 485, 24 S.Ct. at 508. At issue in *Tinker* was whether the bankrupt's conduct had been malicious for the purpose of § 17(a)(2). The Court initially examined the common-law definition of the term "malice." The English and American courts, the Court found, had not defined malice in terms of hatred or ill will toward an injured party but had implied malice from a showing of an unlawful, wrongful, and tortious act, done intentionally, and without justification or excuse. *Id.* at 485–87, 24 S.Ct. at 508–09. The Court also considered the construction of the term under statutes prohibiting the malicious destruction of property that required proof of special malice toward the injured party for conviction. *Id.* at 487, 24 S.Ct. at 509. Reasoning that the purpose of the Bankruptcy Act was to provide relief for the honest debtor, the Court rejected the latter construction and concluded that the term "malicious" as used in § 17(a)(2) was to be construed using the common-law definition of malice. In order to bring a judgment like the one before it within the scope of § 17(a)(2), the Court declared, it was not necessary that the original cause of action have been based upon special malice. Neither a malignant spirit nor a "specific intention to hurt a particular person" was an essential element of the term "malicious" for the purpose of § 17(a)(2):

> [W]e think a wilful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception.

*Id.* at 487, 24 S.Ct. at 509. The Court attempted to qualify its holding, however, by further declaring:

> It is not necessary in the construction we give to the language of the exception in the statute to hold that every wilful act which is wrong implies malice. One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious. It might be conceded that the language of the exception could be so construed as to make the exception refer only to those injuries to person or proper-

ty which were accompanied by particular malice, or, in other words, a malevolent purpose towards the injured person, and where the action could only be maintained upon proof of the existence of such malice. But we do not think the fair meaning of the statute would thereby be carried out. The judgment here mentioned comes, as we think, within the language of the statute, reasonably construed. The injury for which it was recovered is one of the grossest which can be inflicted upon the husband, and the person who perpetrates it knows it is an offense of the most aggravated character; that it is a wrong for which no adequate compensation can be made, and hence personal and particular malice towards the husband as an individual need not be shown, for the law implies that there must be malice in the very act itself, and we think Congress did not intend to permit such an injury to be released by a discharge in bankruptcy.

An action to redress a wrong of this character should not be taken out of the exception on any narrow and technical construction of the language of such exception.

*Id.* at 489–90, 24 S.Ct. at 509–10.

Although the Court in *Tinker* addressed only the definition of the term "malicious" as used in § 17(a)(2) and was clear in requiring that a malicious act under § 17(a)(2) also must have been an intentional act, some courts subsequently interpreted *Tinker* to imply that a willful act need not necessarily have been an intentional act. Such courts, in cases involving drunk driving or auto injuries but not drunk drivers, construed *Tinker* to permit conduct in "reckless disregard" or with "reckless indifference" to the rights of another and even "gross negligence" to come within the definition of a willful act under § 17(a)(2) and

under the parallel exception provided by § 17(a)(8).[2] *E. g., Haerynck v. Thompson,* 228 F.2d 72 (10th Cir. 1955); *Harrison v. Donnelly,* 153 F.2d 588 (8th Cir. 1946); *Standard v. Keenan,* 4 Bankr.Ct.Dec. 208 (N.D.Ga.1978) (B.J.); *Johnston v. Irwin,* 2 Bankr.Ct.Dec. 783 (N.D.Iowa 1976) (B.J.); *Henderson v. Freshour,* 199 Tenn. 539, 287 S.W.2d 929 (1956).

■ The legislative history of § 523(a)(6) indicates that, under this exception,

"willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* 139 U.S. 473 [24 S.Ct. 505, 48 L.Ed. 754] (1902) [*sic*], held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

S.Rep.No.95–989, 95th Cong., 2d Sess. 79 (1978); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 365 (1977), U.S.Code Cong. & Admin. News 1978, p. 6320. It is clear, therefore, that the Congress intended to overrule those decisions that had construed *Tinker* to permit conduct in "reckless disregard" or with "reckless indifference" to the rights of another and even "gross negligence" to come within the definition of a willful act under the prior Act. Nothing in the legislative history of § 523(a)(6), however, suggests that the Congress intended to overrule the *Tinker* Court's interpretation of the term "malicious" as it appeared in the prior statute, and this court declines to imply such an intention. It is this court's opinion, therefore, that the proper definition of the term "malicious" for the purpose of § 523(a)(6) is the common-law definition that was approved and adopted by the Court in *Tinker.*[3]

■ If an act of conversion is done deliberately and intentionally in knowing disre-

---

**2.** This court declined to adopt the "reckless indifference" construction of *Tinker* in *Phillips v. Rambo,* 5 Bankr.Ct.Dec. 800 (Bankr.Ct.M.D. Tenn.1979).

**3.** This court respectfully declines to follow the reasoning in two recent decisions, *Liberty Nat'l Bank & Trust Co. v. Hawkins,* 6 B.R. 97, 6

Bankr.Ct.Dec. 1054 (Bkrtcy.W.D.Ky.1980), and *Grand Piano & Furniture Co. v. Hodges,* 4 B.R. 513, 5 Bankr.Rep. 513 (Bkrtcy.W.D.Va.1980), in which other bankruptcy courts reach a contrary result with respect to the proper definition of the term "malicious" for the purpose of § 523(a)(6).

gard of the rights of another, it falls within the statutory exclusion even though there may be an absence of special malice. *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973). In *W. T. Grant* the collateral that was transferred by the bankrupt continued to be subject to the creditor's security interest. The court, in remanding the case for a further hearing, stated that if the evidence revealed that the creditor acquired knowledge of the transaction at a time when it could have asserted its security interest in the property and failed to take reasonable steps to protect its security, then the indebtedness secured thereby should be discharged. 481 F.2d at 665–66. Such are not the facts before the court in this proceeding. Although the cattle sold by the debtor continued to be impressed with the Bank's security interest, the debtor intentionally concealed his disposition of the cattle from the Bank and knowingly disregarded the fact that, because the livestock were not identified in any way, the sale effectively deprived the Bank of its security by precluding the creditor's ability to pursue it in the hands of an unknown purchaser.

It is the court's opinion, therefore, that, because the debtor's conversion of the Bank's security was both willful and malicious in nature, the debt herein at issue comes within the exception provided by § 523(a)(6) and accordingly is not dischargeable.

An appropriate order will be entered.