In re Jack Bruce BROOKER, Debtor.

BANK OF GREEN COVE SPRINGS, Plaintiff,

v.

Jack Bruce BROOKER, Defendant.

Bankruptcy No. 83–195–BK–J–GP.
Adv. No. 83–318.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 9, 1984.

**840**

Herman S. Paul, Jacksonville, Fla., for plaintiff.

John A. Sampson, III, Jacksonville, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding to determine dischargeability of a debt under § 523(a)(6) of the Bankruptcy Code came before the Court for trial on December 15, 1983. The parties, at the request of the Court, have briefed limited issues.

It is undisputed that the Plaintiff filed, within the debtor's bankruptcy case, a proof of claim for $12,875.14, which it characterized as, "unpaid balance due under an installment note, disclosure statement and security agreement." It is undisputed from the evidence that the parties intended to create, and did in fact execute a security agreement within the meaning of F.S. 679.1–102; it is also undisputed that the plaintiff did not take the step necessary for the perfection of its security interest, i.e. the filing of a financing statement, F.S. 679.302. The Court finds as a matter of fact that prior to filing for bankruptcy, the debtor sold the security, a Soderham Model FOB, without consent of the Plaintiff, to a third party who was without knowledge of the existence of any security interest.

The issues briefed by the parties are whether the failure of the bank to perfect its security interest results *per se* in an invalidation of that interest, and whether the failure of the security agreement to prohibit unauthorized disposition of the collateral by the debtor, has impact on the dischargeability of the debt. For reasons discussed *infra,* while we emphatically do not find that failure to perfect a security interest in any way diminishes the interest as between the parties, in a bankruptcy context, a secured party's failure to perfect its interest generally proves fatal to the survival of its security interest because of the operation of 11 U.S.C. § 544(a)(1). The second question briefed by the parties, i.e. the effect of the absence in the security agreement on a prohibition against selling the collateral, we have determined not to be material to the outcome, and that question will not be considered.

Clearly, the law of secured transactions (Article Nine of the Uniform Commercial Code, adopted in Florida as Florida Statutes Chapter 679) does not require that a security interest be recorded in order to create rights and liabilities as between the two parties. A fundamental and crucial distinction exists between the creation and attachment of a security interest (see, respectively F.S. 679.201 and 679.203) on the one hand, and its perfection, see F.S. 679.302, *et seq.,* on the other. The latter places the perfecting secured party in a position superior to that of a wide range of hypothetical third parties, but does not enhance its position vis-a-vis the debtor. Conversely, failure to

perfect does not in any way change the nature, nor diminish the extent of the secured party's interest as against the debtor. However, as we shall demonstrate in our discussion *infra,* failure to perfect does have a significant effect on the rights of a secured party in the context of bankruptcy.

Under a purely state law analysis and without the intervention of bankruptcy, the Bank, as holder of an unperfected security interest in personalty which had been conveyed to a third party not in the ordinary course of business, would be limited to such remedies as it might be able to pursue against the debtor only, and not against the third party buyer, as the rights of a buyer not in the ordinary course of business are superior to those of the holder of an unperfected lien, F.S. 679.301. If the plaintiff is to have any remedy beyond taking its position as a general unsecured creditor, it must establish that some portion of the debt is not dischargeable within the meaning of 11 U.S.C. 523(a)(6). That section provides that a general discharge does not act as a discharge from any debt, " . . . for willful and malicious injury by the debtor to another entity or the property of another entity." This section has been construed to apply to situations involving unauthorized disposition of collateral by a number of courts which have determined that specific intent to injure is not required where injury to the property rights of the secured party is an inevitable and known result of the debtor's action. See *In re Howard,* 6 B.R. 256 (Bkrtcy.M.D.Fla., 1980); *In re Scotella,* 18 B.R. 975 (Bkrtcy.N.D.Ill.1982); *In re Donnelly,* 6 B.R. 19 (Bkrtcy.D.Or., 1980); *In re McCloud,* 7 B.R. 819 (Bkrtcy.M.D.Tenn., 1980). In this instance, however, the Court cannot find that the defendant's action in any way diminished the plaintiff's property rights, based on the unperfected status of his security interest. While we do not question that the interest was perfectly good between the parties, it was not good against third parties with superior rights, which category includes the bankruptcy trustee. Section 544(a)(1) of the Bankruptcy Code places the trustee in the position of a judicial lien creditor. Cases decided under the section with respect to unperfected security interests have uniformly held that holders of those interests are in a position inferior to that of the trustee and that their liens are thus avoidable by the trustee. See, e.g. *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104 (Bkrtcy.S.D.N.Y., 1982); *In re Midwestern Food Stores,* 21 B.R. 944 (Bkrtcy.D. Ohio, 1982), et al.

If indeed the Bank's lien would be worthless against the Trustee in that the Trustee's "strong-arm" powers would clearly allow him to avoid the lien, then it cannot be said in any real sense that the defendant's action injured the plaintiff's property interests. The plaintiff had nothing more nor less than a lien good as to the defendant in a nonbankruptcy context, but totally avoidable by the trustee. Thus, given that the debtor did in fact file for bankruptcy under Chapter 7 of the Code and that the precedence of the trustee's position as ideally situated hyphothetical lien creditor over the Bank would have been a foregone conclusion, nothing that the defendant did placed the plaintiff in a worse position than it would otherwise have occupied.

As we noted *supra,* under a non-bankruptcy scenario, the plaintiff would have merely had a lien inferior to that of the purchaser of the collateral, and thus for practical purposes no rights in the collateral (F.S. 679.301). Thus, were this Court to grant a non-dischargeable judgment in the amount of the security interest, we could well achieve the incongruous result of allowing a non-perfecting unsecured creditor better protection on the basis of the debtor having taken bankruptcy than he would otherwise have received. For these reasons, we must find that while, had the creditor perfected its security interest, the debtor's conduct would have been a ground for a finding of non-dischargeability under § 523(a)(6) of the Code, failure to perfect must lead to a different result. We particularly emphasize that this ruling does not represent a retreat from the rule of *In re Howard, supra,* in that no issue of perfection was raised in that case.

A final judgment of dischargeability in accordance with this opinion has been entered this date.