In re Michael Coe **BRANCH** and Berkey Louise Branch, dba Mike Branch Ford, dba Branch Ranch, dba King Implement, dba Athens Ford, Debtors.

**FORD MOTOR CREDIT COMPANY, a Delaware corporation, Plaintiff,**

v.

Michael Coe **BRANCH** and Berkey Louise Branch, dba Mike Branch Ford, dba Branch Ranch, dba King Implement, dba Athens Ford, Defendants.

Adv. No. 84–C–825.
Bankruptcy No. 84–B–02794–J.

United States Bankruptcy Court,
D. Colorado.

July 19, 1985.

212

Donald Burkhardt, Denver, Colo., for plaintiff.

Paul G. Quinn, Denver, Colo., for defendant.

FINDINGS, CONCLUSIONS AND OR-
DER ON COMPLAINT TO DETER-
MINE DISCHARGEABILITY OF
DEBT AND OBJECTION TO DIS-
CHARGE

PATRICIA ANN CLARK, Bankruptcy
Judge.

The matter presently before the Court is
a complaint, filed by Ford Motor Credit
Company (hereinafter FMCC), to determine
dischargeability of a debt under 11 U.S.C.
§ 523(a)(4), (6) and to object to discharge
pursuant to 11 U.S.C. § 727(a)(3), (5). The
complaint alleges that the defendants Mi-
chael C. Branch and Berkey Branch, as
owners and managers of Mike Branch Ford
Tractor Company, failed to remit to FMCC
proceeds derived from the sale of certain
farm equipment in violation of their floor
plan agreement. The defendants answered
and filed motions to dismiss all the causes
of action against them. At the trial, FMCC
withdrew its claim for relief based upon
defalcation while acting as a fiduciary un-
der Section 523(a)(4). Based on the state-
ments of counsel that the only evidence of
Mrs. Branch's involvement in her hus-
band's business affairs was that she an-
swered the telephones on several occasions
in six and one-half years and that she was
required to sign a guarantee of the obli-
gations due FMCC, the Court dismissed the
complaint as to her.

The pertinent facts are as follows. Mi-
chael C. Branch purchased a 50 percent
interest in a Ford tractor dealership in 1976
called Branch-Coleman Ford. Approxi-
mately one year later Mr. Branch bought
out his partner and formed Mike Branch
Ford Tractor Company, a sole proprietor-
ship for which he acted as general manag-
er. On April 13, 1977, Mr. Branch, on
behalf of his dealership, executed an agree-
ment entitled "Tractor and Equipment
Wholesale Plan Application for Financing—
Dealer." The agreement provided for
FMCC extending credit to Mike Branch
Ford Tractor Co. for the purchase of inven-
tory from the Ford Tractor Division of the
Ford Motor Company. In an arrangement
commonly called "floor plan financing,"
FMCC would advance the necessary money
for the dealership's purchases and take a
security interest in the inventory. The
agreement provides in pertinent part:

> 4. *Credits* Dealer agrees that all funds
> or other property belonging to FMCC
> received by Dealer shall be received by
> Dealer in Trust for FMCC and shall be
> forthwith remitted to FMCC.

Michael C. Branch and Berkey Branch also
executed a continuing guarantee of the ob-
ligations of Mike Branch Ford Motor Co. to
FMCC.

The ongoing business dealings between
FMCC and the dealership included two dis-
tinct financing arrangements. The "new
wholesale plan" covered inventory which
the dealership sold at retail. Under the
new wholesale plan, each time the dealer-
ship sold an item it was to remit to FMCC
that portion of the proceeds still owed on
that item. The "rental plan" covered in-
ventory that the dealership leased to cus-
tomers. Under the rental plan, the dealer-
ship was to make monthly payments to
FMCC of 2 percent of the amount financed
for each unit with a balloon payment re-
quired at the end of two years. The les-
sees were granted options to purchase the
leased equipment, and in the event the op-
tion was exercised, the dealership was to
remit the payoff balance forthwith.

The dealership began experiencing se-
vere financial problems in 1980 and 1981.
The farm economy had been badly hurt by
high interest rates and the dealership, de-
pendent upon farmers for business, suf-
fered accordingly. Among the dealership's
creditors was Peoples National Bank of
Tyler, Texas (hereinafter called the Bank).
The Bank was owed approximately $350,-
000 and had a lien on the accounts receiva-
bles as well as all the other dealership
assets except for the new equipment. In
November of 1980, Mike Branch began ne-
gotiating with James Bridges for the sale
of the dealership. On March 4, 1981, be-
fore any sale could be consummated, the
Bank closed down the dealership because
Mr. Branch was in default on his obli-
gations.

The locks to the dealership were changed, a guard was posted and the defendant was denied further access to the premises. In November of 1981, the Bank invited the defendant to retrieve his business records which he then delivered to the law office of Powers Branch, his brother. Soon thereafter, the defendant asked James W. Lake, a friend and business associate, to provide storage space for the dealership records. Mr. Branch moved the records to a barn located on a farm that Mr. Lake was leasing. Then, in April, 1983, the barn was apparently struck by lightning and the ensuing fire destroyed the records stored therein.

The defendant testified that all the dealership records, including the rental records, were present at the dealership at the time he was locked out. He further testified that he transferred the records from the Bank to his brother's office and from his brother's office to the barn without opening the fifty to sixty boxes containing the records. On the other hand, Carl Cunningham, FMCC's branch manager for the Tyler, Texas region from 1971 until 1985, testified that he reviewed the dealership records twice, once while they were in the possession of the Bank and once at Powers Branch's office, and the rental records were not included with the other dealership records. No testimony on behalf of the Bank was offered to show what records it gained possession of when the dealership was closed in March, 1981, what records it made available for Mr. Cunningham's review in August, 1981, or what records it returned to the defendant in November, 1981. In addition, FMCC routinely destroyed the audit reports it performed on the dealership's rental line 12 months after each report was done with the single exception of a report done on February 26, 1981. As a result, the evidentiary record in this matter is incomplete.

On April 23, 1981 FMCC filed a complaint in the District Court of Smith County, Texas alleging that Michael and Berkey Branch owed it approximately $245,000 plus interest and costs. The Branches, despite having filed an answer, failed to appear for trial. Consequently, the court entered a judgment against them in the sum of $273,417.94 on May 11, 1982. On June 11, 1984, the Branches filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this court. FMCC countered by filing its complaint to determine dischargeability and to object to discharge on September 10, 1984. A hearing was held on the complaint and defendant's motions to dismiss on June 14, 1985 and continued on June 18, 1985.

FMCC's complaint is based upon the defendant's alleged failure to remit proceeds to FMCC which the dealership received in exchange for the sale of specified Ford equipment. These sales can be categorized into three distinct types of transactions. The first type, and largest portion of FMCC's claim, consists of alleged sales of 29 units from the dealership's rental line. The second category concerns the alleged sales of four units from the dealership's wholesale line. Finally, the last type concerns distinct series of transactions between the dealership and Bill Winguard, Kilgore College and Texas A & M. The different types of transactions require that each be examined in light of the applicable law in order to determine if either a denial of discharge or an exception to discharge is appropriate.

First as to the objections to discharge, this Court does not find an adequate evidentiary basis to support denying the defendant a discharge under either 11 U.S.C. § 727(a)(3) or (5). The burden of proof in objecting to discharge is governed by Bankruptcy Rule 4005, which states: "At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving his objection." Thus an objection to discharge must be denied unless the complainant adequately shoulders its burden of proof.

■ Section 727(a)(3) operates to deprive a debtor of a discharge if the debtor fails to keep or preserve records, destroys, mutilates, falsifies or conceals records, and such conduct makes it impossible to ascer-

tain the financial condition and material business transactions of the debtor. Here the only controversy regarding the debtor's failure to preserve dealership records relates to the rental records, since it is uncontroverted that the records stored in the barn were destroyed in a fire. There is some question as to whether the rental records were included in the materials obtained by the bank when it took possession of the dealership in March, 1981. Since the defendant claims that the rental records were left on the dealership premises and no testimony was presented on behalf of the bank to the contrary, there is effectively no conflict concerning what happened to the rental records. FMCC contends the rental records were not present when Carl Cunningham conducted his examinations but the defendant cannot be held responsible for producing records of which he personally was deprived possession. Beyond this, the accidental loss of records in a fire caused through no fault of the defendant is not the purposeful destruction or mutilation contemplated by the Bankruptcy Code. *See, International Shoe Co. v. Lewine,* 68 F.2d 517 (5th Cir.1934).

■ Section 727(a)(5) must also be read in conjunction with Bankruptcy Rule 4005 which imposes upon the plaintiff the burden of proving his objection. Here such an objection cannot be sustained since the defendant, in light of the fact that all his business records were destroyed, satisfactorily explained the reasons for his inability to meet the dealership's liabilities. The defendant testified that he put the proceeds from the dealership transactions into one of two dealership bank accounts, both of which were used to finance the dealership's normal operating expenses. Further, FMCC's principal witness, Carl Cunningham, who conducted a review of Mike Branch's business and personal records, testified that he knew of no improper expenditures. In fact, he concluded that the defendant's other businesses "were loss operations that drug Mike Branch Ford Tractor down with them." As a result, this Court is satisfied that the defendant has provided an adequate explanation concerning his inability to meet his liabilities therefore an objection to discharge has not been established.

The complaint also includes objections to the dischargeability of the debt the defendant owes to FMCC pursuant to 11 U.S.C. § 523(a)(4) and (6). These allegations include both embezzlement and conversion. Viewed within the context of the facts at hand, the elements necessary to prove non-dischargeability under either embezzlement or conversion are virtually indistinguishable. Since FMCC emphasized Section 523(a)(6) in its case, the Court's discussion of non-dischargeability will be limited to conversion.

■ In objecting to the dischargeability of a debt, the burden of proof is on the party seeking the exception to discharge. *In re Behr,* 42 B.R. 922 (Bankr.E.D.Pa. 1984); *Matter of Taff,* 10 B.R. 101 (Bankr. D.Conn.1981); *In re Green,* 5 B.R. 247 (Bankr.N.D.Ga.1980). Further, exceptions to dischargeability are to be narrowly construed against the creditor and in favor of the debtor's right of discharge since the exceptions to dischargeability substantially frustrate the rehabilitative goal of the bankruptcy laws. *Matter of Vickers,* 577 F.2d 683 (10th Cir.1978). Finally, the standard of proof in complaints arising under Section 523(a)(6) requires the plaintiff to prove by clear and convincing evidence that the defendant either willfully or maliciously injured the property of the plaintiff. *In re Grainger,* 20 B.R. 7 (Bankr.D.S.C.1981).

FMCC asserts that the sale of 29 units from the dealership's rental line without remittance of the proceeds to FMCC amounts to willful and malicious injury under 11 U.S.C. § 523(a)(6). Evidence was introduced indicating that FMCC initiated an audit of the dealership's rental line on February 26, 1981. FMCC argues that the audit revealed that 29 units had been sold out of trust (SOT), i.e., the dealer failed to pay FMCC the proceeds forthwith after such sale. The defendant admitted that some of the rental units may have been

sold out of trust, however, without his business records he could not be more specific.

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Although unlawful conversion is not specifically mentioned in Section 523(a)(6), a debt arising from willful and malicious conversion is included within the scope of a willful and malicious injury to property of another. 124 Cong.Rec. H11,095–6 (daily ed. Sept. 28, 1978); S17,412–13 (daily ed. Oct. 6, 1978). Before determining whether the defendant's conduct was sufficiently willful and malicious for the purposes of the federal non-dischargeability standard, it is appropriate to ascertain whether the defendant committed the tort of conversion under relevant state law. *Matter of Banister*, 737 F.2d 225 (2d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 509, 83 L.Ed.2d 400 (1984).

■ Conversion is defined as any distinct unauthorized act of dominion or ownership exercised by one person over personal property belonging to another. *Byron v. York Investment Co.*, 133 Colo. 418, 296 P.2d 742 (1956). Here, FMCC has failed to prove by clear and convincing evidence that the defendants converted their property by failing to remit proceeds from sales of rental equipment. The dealership was authorized to exert dominion and control over the rental units subject to its agreement with FMCC. Conversely, the dealership was not authorized to exercise analogous dominion over proceeds derived from the sales of the rental units, rather it was required to remit such proceeds to FMCC forthwith. Nevertheless, FMCC failed to establish conversion because the record is bereft of any indication that the defendant received any proceeds from the sale of rental units.

The evidentiary record provides the foundation upon which a plaintiff, bearing the burden of proof, constructs its prima facie case. Here, crucial omissions in the record prevent FMCC from building its prima facie case. Absent evidence that lessees exercised their purchase options and paid the defendant for the equipment, the Court may only speculate as to what actually occurred. FMCC failed to produce any testimony from even one lessee verifying a purchase of equipment and an accompanying payment to the defendant. Nor were bank records produced which trace receipts attributable to purchases of rental equipment. Since banks keep their own records, perhaps Peoples National Bank could have supplied copies of some of the dealership records that perished in the fire. Here it is problematic what happened to any sales receipts since People's National Bank had a first lien on all dealership accounts receivables. No testimony on behalf of either the Bank or the entity that purchased Mike Branch Ford Tractor Co. from the Bank was presented to show that neither of these entities collected the proceeds. Therefore, based upon a lack of demonstrable evidence, this Court is compelled to find FMCC failed to meet its burden of proof in establishing that the defendant converted proceeds from the rental line.

■ Even if FMCC had adequately shouldered its burden of proof in establishing conversion, it failed to make the requisite showing of damages. "Wrong without damage, or damage without wrong, does not constitute a cause of action." 22 Am. Jr.2d *Damages* § 2 (1965). It is fundamental that the claimant must establish that the loss was caused by the party being sued. *Isaac v. American Heritage Bank and Trust Co.*, 675 P.2d 742 (Colo.1984). Before damages can be awarded to a claimant he must establish that the damages he seeks are traceable to and are the direct result of the wrong sought to be redressed. *Runiks v. Peterson*, 155 Colo. 44, 392 P.2d 590 (1964). Here, no evidence was presented tracing the payment of moneys from any lessee, who had exercised his option to purchase the rental property, to the dealership. As a result, there is too much uncertainty as to whether payment in full was made by the lessees, and to whom such payments were made for this Court to award damages on this issue.

The four sales out of trust, which FMCC alleges involved units from the new wholesale line, present a different situation than the one discussed above. FMCC completed a physical audit of the dealership premises on March 3, 1981 and determined that four units had been sold without FMCC receiving its remittance. Unlike the rental line units, which would not be present on the premises regardless of whether a SOT occurred, all unsold new units should have been on the dealership lot. Consequently, new units not physically present indicate sales have occurred. Furthermore, in contrast to the rental situation where proceeds of a sale theoretically could have gone to the dealership, the Bank, or even the entity which succeeded the Mike Branch Ford Tractor Co., here proceeds could have only gone to Mike Branch Ford Tractor Co. The basis for this conclusion is that the Bank did not have a first lien on the new inventory. Thus a buyer could not purchase a new wholesale unit without first paying the dealership the purchase price. It is the presence of these direct casual links which distinguish the new wholesale SOT's from the rental SOT's and accordingly establish prima facie evidence of conversion.

Although conversion of the proceeds from the four wholesale units has been established, a debt is dischargeable unless the conversion is "willful and malicious." 11 U.S.C. § 523(a)(6). In order for a conversion to be "willful," it must be deliberate or intentional. H.R.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 77–79 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787. A "malicious" conversion may occur within Section 523(a)(6) if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill will. 3 *Collier on Bankruptcy*, ¶ 523.16 (15th ed. 1985).

It is well settled that the intentional conversion of another's property without justification or excuse is non-dischargeable as willful and malicious injury. *Matter of Emporelli*, 42 B.R. 814 (Bankr.W.D.Pa. 1984). Where the debtor knew that by selling inventory he injured a creditor by depriving that creditor of its collateral, the debtor's conduct was willful and malicious. *In re Scotella*, 18 Bankr. 975 (Bankr.N.D. Ill.1982). If an act of conversion is done deliberately and intentionally in knowing disregard of the rights of another, it falls within the statutory exclusion even though there may be an absence of special malice. *In re McCloud*, 7 B.R. 819 (Bankr.M.D. Tenn.1980). The court in *Matter of Klix*, 23 B.R. 187 (Bankr.E.D.Mich.1982), faced a fact scenario similar to that here. FMCC sought to except a former Ford dealer from discharge for converting three vehicles that had been floor planned by FMCC. The court in *Klix* held,

> It would be difficult to find that Mr. Klix possessed a purposeful intent to harm Ford Credit. However, he knew that his act of conversion was in contravention of the rights of Ford Credit, and he proceeded deliberately and intentionally in the face of that knowledge. Such an act, done intentionally and without justification or excuse, is a willful and malicious injury within the meaning of the exception provided by § 523(a)(6). Therefore the debt is nondischargeable.

*Klix*, 23 B.R. at 190–91.

Mike Branch testified that he was well aware of his obligation to remit proceeds to FMCC within five days. Despite this, the defendant stated he violated the agreement several times in order to pay other outstanding debts necessary to keep his business open. The defendant argues that at all times he intended to pay FMCC and that he would have accomplished his goal if the sale of the dealership to Mr. Bridges had not fallen through. However, "[bad] business judgment on the debtor's part, coupled with a hope that he might eventually be able to 'catch up and bail out,' is not just cause or excuse." *In re Sindic*, 44 B.R. 167 (Bankr.E.D.Wis.1984); *In re Pommerer*, 10 B.R. 935 (Bankr.D.Minn.1981). Based upon the defendant's experience and course of dealing, he could not honestly entertain the belief that he could keep the proceeds and remit them to FMCC as his

cash flow permitted. Therefore, this Court finds that the defendant willfully and maliciously converted the proceeds derived from the sale of the four new units.

■ The final category of transactions can be subdivided into three distinct series of transactions. The first two include special tractor placement programs the dealership engaged in with Texas A & M and Kilgore College. The third consists of a series of transactions between the dealership and Bill Wingard. First as to the Texas A & M transactions, the evidence reveals that Michael C. Branch personally purchased a tractor from his dealership which he then transferred to Texas A & M. The dealership assigned the retail contract from this purchase to FMCC. Texas A & M then paid the purchase price in three installments totaling $18,913.50 with the last payment made on April 7, 1980. Either the dealership or the defendant remitted $13,211.57 to FMCC, leaving a balance owing of $5,701.93.

The defendant provided no explanation for his failure to turn over to FMCC Texas A & M's final installment payment. This is especially noteworthy in light of the defendant's personal assumption of this obligation since FMCC refused to finance the purchase by Texas A & M. Certainly a businessman with Mr. Branch's experience was aware that by using the final installment payment for his own business purposes, he was acting in contravention of the rights of FMCC. This conduct reflects an act of conversion done deliberately and in knowing disregard of the rights of another and falls within the statutory exception to discharge. *In re McCloud*, 7 B.R. 819 (Bankr.M.D.Tenn.1980). Therefore, this Court finds an absence of justification for the defendant's failure to remit the $5,701.93 and such debt is rendered non-dischargeable.

■ The next series of transactions arose out of a tractor replacement program the defendant engaged in with Kilgore College. On June 30, 1976 Michael C. Branch entered into an agreement whereby Kilgore College purchased a new Ford tractor from him personally and the college was guaranteed that each year Mike Branch Ford Tractor Company would provide Kilgore College with a new replacement tractor at no additional cost to the college. The dealership underwrote this program for promotional purposes. Kilgore paid for the original tractor in full, however, FMCC claims it was not paid for the last tractor the dealership provided to Kilgore in March, 1980.

The evidence surrounding the tractor replacement program does not support FMCC's assertion that the defendant willfully and maliciously converted its personal property. FMCC was apparently on notice that the dealership was engaged in the replacement program and had been paid by either Mr. Branch or the dealership for the previous replacement tractors up until the dealership was closed down. That FMCC was left with an outstanding obligation does not, by itself, satisfy the elements necessary to find the debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). As stated no money was paid by Kilgore for the last tractor and, therefore, nothing could be converted. The situation with Kilgore involves merely an unpaid obligation for the last tractor furnished to the college.

■ The last series of transactions occurred between the dealership and Bill Wingard. Apparently Mr. Wingard purchased a Ford tractor for $9,900 from the dealership pursuant to a retail installment contract. The dealership then assigned the contract to FMCC. FMCC provided the retail financing on the sale to Mr. Wingard and perfected its security interest in the tractor by filing a UCC financing statement. On August 20, 1980 Bill Wingard traded in the tractor to Mike Branch Ford Tractor Company as partial payment on the purchase of another tractor. The trade-in tractor was subsequently transferred to Jarvis Christian College under another tractor replacement program.

FMCC asserts that $11,598.66 is the balance owed on the trade-in tractor and since the defendant transferred FMCC's collat-

'eral in violation of its rights, the debt should not be discharged. Assuming arguendo that the dealership took the trade-in subject to FMCC's security agreement (see Tex.Bus. & Com.Code § 9.307), such conduct does not rise to the level of willful and malicious conversion. The dealership's failure to check with the county recorder's office for a financing statement verifying FMCC's perfected lien may have constituted negligence or recklessness. Nevertheless, a claim based merely upon negligence does not necessarily constitute a willful and malicious injury within Section 523(a)(6) even if the negligence is alleged to be reckless and wanton. 3 *Collier on Bankruptcy*, ¶ 523.16 (15th ed. 1985). Absent evidence that the defendant intended to injure anyone, such conduct cannot be classified as willful and malicious. *Laatsch v. Stanfield*, 14 B.R. 180, 5 CBC 2d 229 (1981). Therefore, this Court finds that any debt owed to FMCC arising out of the Wingard transactions is not subject to the exception to discharge. If FMCC has a valid lien on the trade-in tractor, they may be able to recover it from Jarvis Christian College.

For the foregoing reasons, it is

ORDERED that the portion of Ford Motor Credit Company's judgment in the Texas District Court attributable to the four units from the new wholesale line is non-dischargeable. Further the debt of $5,701.93 attributable to the final installment payment by Texas A & M is also non-dischargeable. Interest is awarded accruing at the applicable rate from the time of the state court judgment.

FURTHER ORDERED that Ford Motor Credit Company should recover a reasonable attorney's fee of 15 percent of the non-dischargeable debt as provided for in underlying instruments executed between the defendant and Ford Motor Credit Company.

FURTHER ORDERED that all other debts owed to Ford Motor Credit Company by the defendant are discharged.

FURTHER ORDERED that the parties shall have 10 days from the date this Order

becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Clerk without further order of the Court.