In re Walter Lee HARRIS, Jr., fmly. d/b/a Junior's Motors, and Frances Mai Harris, a/k/a Fran Haynes, Debtors.

**MURFREESBORO PRODUCTION CREDIT ASSOCIATION, Plaintiff,**

v.

**Walter Lee HARRIS, Jr. and Frances Mai Harris, Defendants.**

**Bankruptcy No. 379–02248. Adv. No. 380–0097.**

United States Bankruptcy Court, M. D. Tennessee.

Dec. 16, 1980.

---

13. F. R. Bankr. P. 752.

George C. Eblen, Shelbyville, Tenn., for plaintiff.

John E. Buffaloe, Jr., Nashville, Tenn., for defendants.

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This matter is before the court upon a complaint filed by one of the debtors' secured creditors seeking to deny the debtors' discharge under § 727 of the Bankruptcy Reform Act of 1978 or, in the alternative, to except its debt from the debtors' discharge under § 523 of the Act. The basis for the creditor's complaint is the sale by the debtors of certain livestock in which the plaintiff held a security interest without a corresponding application of the proceeds toward repayment of the indebtedness secured thereby.

The debtors' principal livelihood was derived from the trading of livestock, an activity in which the debtor-husband had engaged in varying degrees since childhood. For the purposes of this proceeding, the relationship between the debtors and the plaintiff began on October 15, 1978, when the debtor-husband executed a financial statement and loan application for the purpose of obtaining a loan with which to purchase ten sows. The plaintiff approved

the loan, which was evidenced by a demand note executed by both debtors. The October 15 financial statement was the only comprehensive statement of the debtors' financial affairs that was provided the plaintiff. Subsequent to this initial transaction, the debtors periodically executed loan applications for additional advances with which to purchase additional livestock. On such applications, the debtors listed certain livestock in a portion of the applications designated "LIVESTOCK PROGRAM." It was the livestock listed by the debtors in this portion of the applications that served as security for the advances and that was sold by the debtors. Another portion of each application consisted of a "REVISED REPAYMENT PLAN" in which the parties set forth the dates before which the livestock purchased with the advances was to have been sold and the proceeds from the sale thereof applied toward repayment of the indebtedness.

### Section 727(a)(2)(A) as a Ground for Relief

The court initially disposes of the plaintiff's objection to the debtors' discharge on the ground that the debtors concealed property with an intent to hinder, delay, or defraud a creditor under § 727(a)(2)(A). The property alleged to have been concealed by the debtors consisted of several head of cattle that the plaintiff observed on a farm rented by the debtors. The proof that was developed at the hearing of this matter revealed that the cattle observed by the plaintiff all was owned by the debtor-husband's father. Even assuming that the plaintiff could show a concealment, the property so concealed would not have been the debtors' property. The court concludes, therefore, that the plaintiff's objection to the debtors' discharge under the concealment clause of § 727(a)(2)(A) is without merit.

The plaintiff also objects to the debtors' discharge on the ground that the debtors, with intent to hinder, delay, or defraud a creditor, transferred property of the debtors' under § 727(a)(2)(A). At the conclusion of the hearing, the court raised the issue of whether "property of the debtor" as used in § 727(a)(2)(A) includes property in which a secured creditor has a security interest or whether the phrase is confined to property owned by the debtor free and clear of any security interests and transferred in order to hinder, delay, or defraud creditors generally by depriving the estate of property for distribution.

Section 727 is derived from § 14(c) of the Bankruptcy Act of 1898, as amended.[1] S.Rep.No.95–989, 95th Cong., 2d Sess. 98 (1978); H.R.Rep.No.95–595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. It was held under the old Act that in order to come within the provisions of § 14(c)(4), a transfer warranting a denial of discharge must have diminished the assets that otherwise would have been available for distribution to creditors.[2]

1. Section 14(c)(4) provided:
   c. The court shall grant the discharge unless satisfied that the bankrupt has . . . (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; . . . .
   11 U.S.C. § 32(c)(4) (1976).

2. The court in *BVA Credit Corp. v. Brown*, 2 Bankr.Ct.Dec. 97 (E.D.Va.1975) (B.J.), appears to have reached a contrary result but without considering the authorities cited in the text. In *BVA* the bankrupt, who was in the construction business, transferred construction money advanced by the secured creditor on a specific project to other unrelated enterprises of the bankrupt's. The court concluded, without considering the extent to which such transfers diminished the assets that otherwise would have been available for distribution to the bankrupt's creditors generally, that the transfers warranted a denial of the discharge under § 14(c)(4). The court reasoned that such a system of "rob[bing] Peter to pay Paul" is

   clearly utilized with the intent to *hinder* and *delay* creditors. It is more. It *defrauds* in that the lender is provided less security than he would have under an honest application [of the funds advanced], for if part of the funds are diverted elsewhere, less of a building can be constructed with the remaining funds upon which a security interest would

*In re Gould*, 31 F.Supp. 793 (D.Conn.1939), aff'd sub nom. *Gould v. Niagara Sprayer & Chemical Co.*, 110 F.2d 528 (2d Cir. 1940); *Farmers & Citizens Bank v. Paskin (In re Harding)*, 2 Bankr.Ct.Dec. 472 (W.D.Wis. 1976) (B.J.); *Associates Financial Services Co. v. Reents*, 1 Bankr.Ct.Dec. 1308 (W.D. Wis.1975) (B.J.); *Production Credit Ass'n v. Welsh*, 1 Bankr.Ct.Dec. 990 (W.D.Wis.1975) (B.J.). It likewise was held that, because § 14(c)(4) applied only to property that passed to the trustee, a transfer of mortgaged property or of property subject to a security interest in which the debtor had no equity did not constitute a transfer of the debtor's property with an intent to hinder, delay, or defraud creditors.[3] *Devorkin v. Security Bank & Trust*, 243 F. 171 (6th Cir. 1917); *Associates Financial Services Co. v. Reents, supra; see Butler Bros. v. Masor*, 117 F.2d 368 (7th Cir. 1941); *In re Woods*, 71 F.2d 270 (2d Cir.), cert. denied, 293 U.S. 601, 55 S.Ct. 117, 79 L.Ed. 693 (1934); *In re Sandler*, 26 F.Supp. 841 (D.Md.1939); *Farmers & Citizens Bank v. Paskin (In re Harding), supra; Production Credit Ass'n v. Welsh, supra.* See also *Albinak v. Kuhn (In re Manufacturers Trading Corp.)*, 149 F.2d 108 (6th Cir. 1945). The appropriate remedy for a secured party whose security had been disposed of by the debtor was said to have been provided by § 17(a)(2), which excepted from the debtor's discharge a debt or liability for the willful and malicious conversion of the property of another. *Farmers & Citizens Bank v. Paskin (In re Harding), supra; Associates Financial Services Co. v. Reents, supra; Production Credit Ass'n v. Welsh, supra.*

In recently holding that the Bankruptcy Reform Act permits a debtor to exempt only his equity in property that is subject to a security interest, *In re Morgan*, BK No. 380–00633 (Bankr.Ct.M.D.Tenn. Oct. 27, 1980), this court examined the interrelationship between property of the debtor's that is subject to a security interest and property of the estate under § 541. The court concluded that "property of the estate" under § 541(a)(1), which consists of "all legal or equitable interest of the debtor in property as of the commencement of the case," does not include a secured party's interest, but only the debtors' interest in property that is subject to a security interest. Hence, this court held in *Morgan* that only the debtor's equity in such property passes into the estate under § 541 for distribution to creditors.

■■■ Consistent with *Morgan* and with the case law interpreting § 14(c)(4) of the prior Act, the court is of the view that "property of the debtor" as used in § 727(a)(2)(A) applies only to the debtor's interests in property that pass to the trustee under § 541 for distribution to creditors. The court also is of the view that, because only the debtor's equity in property that is subject to a security interest passes into the estate under § 541, a transfer of such property in which the debtor has no equity does not constitute a transfer of the debtor's property with an intent to hinder, delay, or defraud creditors under § 727(a)(2)(A). Based upon the court's finding at the conclusion of the hearing that the debtors were without any equity in the property herein at issue, therefore, it is the court's conclusion that the debtors' disposition of the property does not warrant a denial of discharge under § 727(a)(2)(A).

---

attach. In other words, the collateral is far less than it should be.
2 Bankr.Ct.Dec. at 99.

**3.** A number of courts held that a concealment or transfer warranting a denial of discharge under § 14(c)(4) may have been intended to hinder, delay, or defraud less than all, or even one, of the debtor's creditors. *Kolesinski v. Mashey*, 127 F.2d 528 (2d Cir. 1942); *In re Freudmann*, 362 F.Supp. 429, 432–33 (S.D.N.Y. 1973), aff'd, 495 F.2d 816 (2d Cir. 1974), cert.

denied, 419 U.S. 841, 95 S.Ct. 72, 42 L.Ed.2d 69 (1974); *In re Strotz*, 61 F.Supp. 565 (S.D.Cal. 1944); *Seiko Time Corp. v. Goldberg*, 2 B.R. 15 (Bkrtcy.S.D.Fla.1979). The property concealed or transferred in such cases, however, typically appears to have been property that, but for the concealment or transfer, would have been available as property of the bankruptcy estate for distribution to creditors generally and not assets that were subject to a security interest and in which the debtors had no equity.

### Section 523(a)(2)(B) as a Ground for Relief

The plaintiff next seeks a determination by the court that certain debts owed it by the debtors are nondischargeable under § 523(a)(2)(B) as money or property or an extension, renewal, or refinance of credit that was obtained by use of false financial statements.

■ It was well established under the former Act that the creditor had the burden of proving that its debt came within one of the exceptions enumerated in § 17(a), which was to be construed liberally in favor of the bankrupt. *E. g., Love v. Tower Loan of Mississippi, Inc.,* 577 F.2d 344, 349 (5th Cir. 1978); *Public Finance Corp. v. Taylor,* 514 F.2d 1370 (9th Cir. 1975); *Brown v. Buchanan,* 419 F.Supp. 199 (E.D.Va.1975). The creditor was required to prove each of the elements required for relief under § 17(a)(2), including that credit had been extended in reliance upon the false financial statement, which reliance must have been reasonable under the circumstances. *E. g., McDowell v. John Deere Industrial Equipment Co.,* 461 F.2d 48 (6th Cir. 1972); *Bank of Waynesboro v. Yeiser,* 2 B.R. 98 (Bkrtcy.M.D.Tenn.1979), and the additional cases cited therein. The reasonable-reliance element under the old Act now specifically has been incorporated into § 523(a)(2)(B)(iii).

Four demand notes evidence the debtors' indebtedness to the plaintiff. The plaintiff's initial loan to the plaintiff on October 17, 1978, in the amount of $2,711.50 and the plaintiff's second loan on November 6, 1978, in the amount of $5,741.59 are eliminated by the plaintiff from its § 523(a)(2)(B) theory in the amended pretrial order that was filed in this proceeding. The plaintiff does not suggest that the debtors did not own the livestock listed in the financial statement that was executed in connection with the initial transaction in October of 1978 or that listed in the application that was executed in connection with the November loan. The plaintiff thus confines its § 523(a)(2)(B) theory to the two remaining advances that were made to the debtors on January 18, 1979, and on March 30, 1979.

■ On January 18, 1978, the debtor-husband executed an application for a loan for the stated purpose of purchasing certain livestock, including six Holstein heifers, one boar, and sixty-four pigs. The plaintiff approved the application and took a purchase-money security interest in all of the livestock that was to be purchased by the debtor. Neither the plaintiff nor the debtors understood that the debtors owned such livestock at the time the application was executed on January 18. Hence, the plaintiff could not reasonably have relied upon such a representation as a basis for making the advance.

■ On March 30, 1979, the debtor-husband executed an application for an additional advance in the amount of $8,873.03 for the stated purpose of purchasing twenty-one cows and eleven calves. The plaintiff approved the application and again took a purchase-money security interest in all of the livestock that was to be purchased by the debtors. The debtors also listed the six Holstein heifers that presumably had been purchased with the proceeds from the January loan. Neither the plaintiff nor the debtors understood that the debtors owned the twenty-one cows and eleven calves at the time the application was executed on March 30. Hence, the plaintiff could not have reasonably relied upon such a representation as a basis for making the advance. Although the debtor-husband admitted that he sold the heifers, there was no evidence introduced to establish when they were sold. Even assuming, however, that the debtor-husband had sold the heifers prior to March 30 and that his representation of continuing ownership thus was false, the court cannot conclude that the plaintiff's reliance, if any, upon such a representation as a basis for making the additional advance was reasonable under the circumstances. The debtor-husband was in the business of buying and selling livestock. The repayment plan to which the parties had agreed in connection with the January loan for the purchase of the six heifers provided for the sale of that livestock be-

fore May 1, 1979. Such knowledge of the debtor-husband's affairs and, more important, of the sale of the heifers that clearly had been contemplated by the plaintiff as well as by the debtors was sufficient to place the plaintiff on notice that further inquiry into the status of the heifers was necessary.

The court concludes, therefore, that the plaintiff is not entitled to relief under § 523(a)(2)(B).

*Section 523(a)(6) as a Ground for Relief*

Finally, the plaintiff seeks to except its debt from the debtors' discharge on the ground that the disposition of the livestock that was subject to its security interest constituted a willful and malicious injury by the debtors to the property of another under § 523(a)(6).

■ The phrase "willful and malicious injury" as used in § 523(a)(6) was intended to include "willful and malicious conversion." *Grand Piano & Furniture Co. v. Hodges,* 4 B.R. 513 (Bkrtcy.W.D.Va.1980); 124 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini), H11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

In a recent opinion, this court reviewed the controlling Tennessee decision relative to the conversion of collateral and concluded that in order for a secured creditor to maintain a cause of action for conversion under the present status of the law in this state, it must show that the disposition of the collateral was unauthorized and that the creditor had a right to immediate possession at the time of the unauthorized disposition. *Borg-Warner Acceptance Corp. v. Binkley,* BK No. 79–30291 (Bankr.Ct.M.D. Tenn. June 4, 1980).

■ A review of the security agreements between the debtors and the plaintiff reveals no provision prohibiting the sale of the collateral by the debtors and no requirement that the proceeds from any sale be segregated from other of the debtors' funds or remitted to the plaintiff immediately upon receipt. Indeed, the parties agreed that each advance was to be repaid from the proceeds derived from the resale of the livestock purchased with the loan proceeds under a repayment schedule that was incorporated into each of the debtors' loan applications. It is clear, therefore, that the debtors were free to sell the livestock, as was contemplated by the parties, and that, if they did so prior to the date specified in the repayment schedules, they could use the proceeds for any purpose they saw fit until the repayment date arrived. The only obligation imposed upon the debtors relative to the proceeds from the anticipated sales was to pay the plaintiff the indebtedness secured thereby when due with interest. As early as May 10, 1979, the plaintiff realized that the debtors' loans were undercollateralized and yet at that time and again in June and in July of that year, the plaintiff made additional advances to the debtors without demanding the execution of additional notes and without making any inspection to determine the status of its collateral. The facts before the court are not unlike those in *Bank of Meeker v. McGinnis,* 586 F.2d 162 (10th Cir. 1978), in which the court affirmed a denial of relief for willful and malicious conversion under § 17(a)(2) of the former Act because the secured creditor had not taken reasonable steps to protect its security interest in cattle when it knew that the bankrupt was likely to sell them.

■ Even were the plaintiff able to show that the debtors' disposition of the proceeds from the sale of the collateral amounted to a conversion, the court would not find that such a conversion was willful and malicious. Section 523(a)(6) is intended to overrule those cases under the former Act that had interpreted the "willful and malicious" language of § 17(a)(2) to include conduct in reckless disregard of the rights of another. *Alexander v. Donnelly,* 6 B.R. 19 (Bkrtcy.D. Or.1980); *Grand Piano & Furniture Co. v. Hodges, supra* ; S.Rep.No.95–989, 95th Cong., 2d Sess. 79 (1978); *see Phillips v. Rambo,* 5 Bankr.Ct.Dec. 800 (Bankr.Ct.M.D. Tenn.1979). The uncontradicted proof in this case establishes that between January 18, 1979, and August 13, 1979, the debtors

made regular payments on their indebtedness to the plaintiff that exceeded $20,000. Exhibits 14, 15. This conduct by the debtors rebuts even an inference that, by using the proceeds from sales of the plaintiff's collateral to pay creditors other than the plaintiff, the debtors intended to effect a willful and malicious conversion of the plaintiff's security interest.

It is the court's conclusion, therefore, that the plaintiff is not entitled to relief under § 523(a)(6).

An appropriate order will be entered dismissing the complaint.