In re Terrence John ELLEFSON, Rhonda Lynn Ellefson, Debtors.

KELLER FARMS, a partnership, Plaintiff,

v.

Terrence John ELLEFSON, Rhonda Lynn Ellefson, Defendants.

Bankruptcy No. EF7–83–00826.
Adv. No. 83–0203–7.

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 5, 1985.

Robert W. Mudge (Gwin, Gilbert, Gwin, Mudge & Porter), Hudson, Wis., for plaintiff.

Thomas R. Schumacher (Doar, Drill & Skow, S.C.), Baldwin, Wis., for debtors.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DISMISSING COMPLAINT OBJECTING TO DISCHARGE

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Plaintiff Keller Farms, by Gwin, Gilbert, Gwin, Mudge & Porter, having filed a Complaint Objecting to Discharge; and Debtors Terrence John and Rhonda Lynn Ellefson, by Doar, Drill & Skow, S.C., having filed an Answer; and a trial having been held; and the Plaintiff appearing by Attorney Robert W. Mudge; and the Debtors appearing by Attorney Thomas R. Schumacher; and briefs having been filed; the Court, being fully advised in the premises, FINDS THAT:

1. In November or December of 1981, Plaintiff Keller Farms, a partnership, sold 26 dairy cows to Debtors Rhonda Lynn and Terrence John Ellefson on an installment basis. The sale price was $30,000. The Debtors have never had an equity position in the cattle and now owe, with interest, approximately $33,000.

2. At about the same time, the Debtors granted Keller Farms a security interest in all "livestock now owned or hereafter acquired". According to the terms of the farm security agreement, the Debtors were permitted to sell "deceased, diseased and male young dairy cattle in accordance with good farming practice in the ordinary course of farm business."

3. The sale was part of a larger transaction which included the lease of a farm to the Debtors.

4. The Debtors' fledgling dairy farming operation soon experienced difficulties and, by May of 1982, all of the dwindling proceeds from the sale of the Debtors' milk production were applied to milk account assignments—including an assignment to Keller Farms.

5. After May, 1982, the Debtors financed their operation with personal savings, the sale of personal property and the sale of collateralized cattle. Debtor Terrence John Ellefson testified that the cattle sold were either diseased, deceased or male calves and produced receipts for the sales of seven cows in 1982.

6. Loran Keller, on behalf of Keller Farms, testified that he talked to Mr. Ellefson from time to time regarding diminishing payments received on account of the Debtors' milk assignment and that Mr. Ellefson continued to be optimistic in outlook. Mr. Ellefson never revealed the extent to which he was selling cattle.

7. One of the last such discussions took place in February of 1983. Mr. Ellefson told Mr. Keller that the farm's trouble was due to cows which had temporarily stopped producing. Mr. Keller told Mr. Ellefson that he did not want Mr. Ellefson to sell or remove any collateralized property without approval.

8. In May of 1983, the Debtors finally abandoned the farm and the remaining cattle when they learned their electricity was to be disconnected for non-payment.

9. Keller Farms sold the remaining collateralized cattle for approximately $8,000.

10. On May 23, 1983, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code.

11. "[I]n order for a debtor to be denied his discharge under 11 U.S.C. § 727(a)(2)(A), the objecting creditor must show three things. First, that the debtor transferred, removed, destroyed, mutilated or concealed his property. Second, that he did so within one year of the filing of the petition, and third, that it was done with the requisite intent." *In re Ries*, 22 B.R. 343, 345 (Bankr.W.D.Wis.1982).

12. As the Debtors did not have an equity interest in the collateralized cattle, they did not transfer "their" property— that is, property which would have been available to satisfy the claims of their unsecured creditors. *In re Harris*, 8 B.R. 88, 90–91, 7 B.C.D. 437, 438–439 (Bankr.M.D. Tenn.1980) (citation to three of this Court's decisions under the Bankruptcy Reform Act of 1898).

13. A debt is non-dischargeable to the extent that it is for willful and malicious injury by the debtor. 11 U.S.C. sec. 523(a)(6).

14. Common law conversion is an "injury" under section 523(a)(6); a sale of secured property which is contrary to the security agreement constitutes a conversion. *Ries*, Paragraph 11 *supra*, at 346.

15. It seems reasonable to conclude that, at some period of time before May, 1983, the Debtors' continued farming operation was not "in accordance with good farming practice" and that continued sale of cattle was not "in the ordinary course of farm business."

16. However, there is insufficient evidence for this Court to determine either

the extent of that period or, if that period began after 1982, whether any cattle sales took place during that period. *See* 29 Am. Jur.2d *Evidence* sec. 127 (1967) (moving party has the burden of proving facts essential to its cause of action).

## CONCLUSIONS OF LAW

1. The Debtors can not be denied their discharge.

2. The Debtors' obligation to Keller Farms is dischargeable.

## ORDER

IT IS ORDERED THAT the Complaint filed in the above-captioned adversary proceeding be, and the same hereby is, DISMISSED, without costs.