**In the Matter of Armando and Janet AYALA, Debtors.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Armando AYALA, Defendant.**

**Bankruptcy No. 186–00169–A–7F.**
**Adv. No. 189–0071.**

United States Bankruptcy Court,
E.D. California,
Fresno Division.

Oct. 10, 1989.

Jeffrey W. Eisinger, Sp. Asst. U.S. Atty., Small Business Admin., Fresno, Cal., for the U.S.

M. Nelson Enmark, Fresno, Cal., for Ayala.

## MEMORANDUM OPINION

RICHARD T. FORD, Bankruptcy Judge.

### INTRODUCTION

On March 27, 1989, the United States of America by the Small Business Administration filed a Complaint Objecting to the Discharge of the Debtor Armando Ayala. An Answer was filed by the attorney for the Debtor, and an Amended Complaint and an Answer to First Amended Complaint were also filed. At the pre-trial hearing, it was agreed that Plaintiff would proceed only on his First Cause of Action, alleging a violation of Bankruptcy Code § 727(a)(2)(B). The time set for trial was September 7, 1989, at 1:30 p.m. in the above-entitled Court. At the appointed time, Jeffrey W. Eisinger, Special Assistant U.S. Attorney, appeared for the United States of America/Small Business Administration. M. Nelson Enmark appeared as attorney for the Debtor. The matter was tried, and after receipt of oral and documentary evidence, arguments of counsel, and the receipt of Points and Authorities, the matter was submitted. This is now the Court's decision.

### FINDINGS OF FACT

Both parties admitted in their Trial Briefs that the following facts were not in dispute, and the Court therefore makes these findings:

1. The Plaintiff is a creditor of the Defendant.

2. This case was converted from a Chapter 11 to a Chapter 7 on December 12, 1988.

3. At the time the case was converted to Chapter 7, the Defendant knew that he no longer had a right to collect the accounts receivable for his own profit. The accounts receivable due were between $25,000.00 and $35,000.00 on the date of conversion.

4. After the date of conversion, the Debtor contacted certain account debtors for the purpose of collecting payments from them.

5. The Defendant received payments on accounts receivable through the mail after the case was converted to a Chapter 7, and these payments were not turned over to the Trustee or to the Plaintiff.

6. At the § 341 meeting on February 1, 1989, the Defendant represented to Plaintiff's counsel that he might be interested in paying the Plaintiff for the right to collect the outstanding accounts receivable. However, no actual offer was ever made.

7. On May 13, 1989, the Debtor did make the accounts receivable records available to Plaintiff.

The Court finds the following facts to be true based upon the testimony of Mr. Ayala:

8. The accounts receivable collected (said to be under $500.00) were apparently collected from three to five persons, and when collected, the Debtor used the proceeds for his own account.

9. The Debtor did not record the receipt of the accounts receivable anywhere including on the accounts receivable card or ledger documents.

## DISCUSSION

The Plaintiff Small Business Administration takes the position that only honest debtors should receive a discharge and the Bankruptcy Code should be liberally applied to protect the Debtors only in those cases where there is no intent to violate its provisions. Plaintiff cites the case of *Northern Trust Co. v. Garman* 643 F.2d 1252 (7th Cir.1980) as standing for that proposition. Plaintiff alleges that the Defendant recovered accounts receivable generated before the case was converted to a Chapter 11, which he kept from the Trustee and the Plaintiff, and then he converted them to his own use.

The Defendant claims that prior to conversion from Chapter 11 to Chapter 7 on December 12, 1988, there was no equity for the estate in the accounts receivable and that Plaintiff and the Trustee knew this fact. There is no question that the accounts receivable were security to the Small Business Administration debt, and there was considerably more money due the Small Business Administration than was secured.

The Debtor/Defendant further alleges that on February 17, 1989, Relief from the Automatic Stay was granted to the Small Business Administration on a motion filed by them. The parties entered into a Stipulation, which among other things recites as follows:

"4. SBA has appraised, for purposes of valuation, the collateral presently securing SBA's claim based upon the security instruments.

5. SBA lacks adequate protection for its security interest from any source within the estate. Additionally, there is no equity in the estate property which secures the SBA loan and there is no prospect for reorganization.

6. Unless SBA is permitted relief from the automatic stay provisions of 11 U.S.C. § 362, to foreclose upon its security, SBA will be irreparably damaged in its attempts to recover the outstanding debt owing SBA.

This document was then signed by M. Nelson Enmark, attorney for Ayala, by Jeffrey W. Eisinger, Special Assistant U.S. Attorney for the Small Business Administration, and James M. Ford, Chapter 7 Trustee. The document was then presented to the undersigned United States Bankruptcy Judge (no relation to James M. Ford, Chapter 7 Trustee), and it was signed on February 17, 1989. Because relief was granted, Defendant argues that the accounts receiv-

273

able were automatically not property of the estate but were the property of the SBA. Defendant further alleges that the Chapter 7 trustee never made a formal demand for the accounts receivable documents or the accounts receivable. The Defendant alleges, if he collected and concealed anything, it was the property of the creditor and not the estate.

The attorney for the Debtor/Defendant cites the case of *Farmers Bank v. McCloud (In re McCloud)*, 7 B.R. 819, 3 C.B.C.2d 701 (Bkrtcy.M.D.Tenn.1980) for the proposition that there is no violation of Bankruptcy Code § 727(a)(2)(B) if the property involved is subject to a security interest and the Debtor has no equity in it. Counsel correctly points out that in order to violate § 727(a)(2)(A) or (B) there must be an actual intent as opposed to constructive intent. Defendant cites *O'Brien v. Terkel*, 3 C.B.C.2d 513 (S.D.Fla.1980) for the proposition that a claim of transfer of a small value negates fraudulent intent required to be proved under § 727.

§ 727(a) states "The Court shall grant the Debtor a discharge, unless—

(2) the Debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this Title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(B) property of the estate, after the date of the filing of the petition."

■ The elements that must be proved are:

1. There must be a transfer of property;

2. It involves property of the estate;

3. The transfer occurred after the filing of the petition;

4. The Debtor had, at the time of the transfer, an intent to hinder, delay, or defraud a creditor.

It appears that elements 1 and 3 are admitted by Defendant, and therefore elements 2 and 4 are the only elements in dispute.

Bankruptcy Rule 4005 states that the burden of proof is on the Plaintiff in a § 727 action.

Because a fraud element is present, a split of authority exists as to whether only a preponderance of evidence is necessary to sustain this burden or whether clear and convincing evidence must be shown. In *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988), the Court held that the standard of proof necessary to establish an exception to dischargeability of a debt under § 523 was a preponderance of evidence. The Court stated that because the Code does not state a level of proof necessary, that in the face of this silence, Courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings.

Since the Code also does not state the level of proof necessary under § 727, based on the Fourth Circuit's reasoning in *Combs*, some Courts find that a complaint objecting to the discharge of the Debtor under § 727 must also be proven by a preponderance of evidence. Case law in support of this level of proof include *In re Parker*, 85 B.R. 384 (E.D.Va.1988); *In re Anglin*, 89 B.R. 35 (W.D.Ark.1988); *In re Riso*, 74 B.R. 750 (D.N.H.1987); *In re Clausen*, 44 B.R. 41 (D.Minn.1984); *In re Shults*, 28 B.R. 395 (9th Cir. B.A.P.1983). No Ninth Circuit case has been found which adopts a clear and convincing standard in § 727 cases.

This Court will therefore adopt the preponderance of evidence standard ·in this Court.

■ Plaintiff correctly points out and cites authority that Plaintiff must prove a specific and actual intent under § 727(a)(2)(B) as distinguished from constructive intent. Since direct evidence is rarely provided in these types of cases, Courts recognize circumstantial evidence in providing proof of intent to defraud. *In re Schmit*, 71 B.R. 587 (Bkrtcy.D.Minn.1987); *In re Tveten*, 70 B.R. 529 (Bkrtcy.D.Minn. 1987). The six indicia of fraud set forth in these cases are (a) the lack or inadequacy

of consideration, (b) the family, friendship, or close association relationship between the parties, (c) the retention of possession, benefit, or use of the property in question, (d) the financial condition of the parties sought to be charged both before and after the transaction in question, (e) the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of the debt, onset of financial difficulties, or pendency or threat of suits by creditors, and (f) the general chronology of the events and transactions under inquiry.

In the case at bar, Defendant admits that he knew when the case was converted from a Chapter 11 to a Chapter 7 he no longer had a right to collect the accounts receivable for his own profit, but he did in fact continue to make telephone calls and receive accounts receivable, and he did in fact fail to turn those accounts receivable proceeds over to either the Trustee or the secured creditor. In fact, he has still not paid those sums over to anybody in trust or otherwise. He has stated that he did not now want to violate the provisions of § 727 by turning the funds over to the secured creditor before this case is concluded. A further circumstance to be considered is that the Debtor did not record receipt of the accounts receivable or show them as a credit on the records of the customer. Counsel for Defendant argues that since there is a small amount involved, apparently under $500.00 received from three to five customers, that the *Terry* case stands for the proposition that a de minimus amount involved detracts from actual intent. On the other hand, there is a case entitled *In re Krich*, 97 B.R. 919 (Bkrtcy.Ill.1988), which states that "If the other requirements are there, the law forbids all efforts to put property beyond the reach of a creditor, *no matter what its value.*" (emphasis added)

■ It appears to this Court that Defendant is arguing that although he received funds from accounts receivable and applied this money to his own use, the Court should not deny his discharge because of the small amount involved. In California,

under the Penal Code, theft is generally defined as taking someone else's money or personal property without their consent and with a specific intent to steal. The Penal Code further specifies or breaks down the theft to one of grand theft and one of petty theft. However, it still is theft. Under the Bankruptcy Code, using the same theory, if the Court finds that the Defendant recovered certain accounts receivable generated before his case was converted to a Chapter 7 and he kept those funds from both the Trustee and the secured creditor, and converted them to his own use, he has violated § 727(a)(2)(B). Unfortunately, the Bankruptcy Code does not provide for a petty denial of discharge or a grand denial of discharge. It merely provides for a denial of discharge. Logically, the amount of money involved is immaterial except for the single purpose of tending to negate the fraudulent intent.

■ Now commenting on the second element under § 727(a)(2)(B), the Defendant argues that the accounts receivable collected by the Defendant were not property of the estate because a relief from stay order had been granted. 11 U.S.C. § 541(a)(1) defines property of the estate as "all legal or equitable interests of the Debtor in property as of the commencement of the case." The mere fact that counsel for the Plaintiff and Defendant and the Chapter 7 Trustee signed a Stipulation agreeing that the Court could enter an order granting relief from stay does not transfer the property (accounts receivable) from the estate to the secured creditor until the secured creditor either forecloses on the collateral or by some other manner physically takes possession of the collateral. Clearly in this case, they did not foreclose on the collateral, and the accounts receivable documents had never been turned over to the secured creditor. As a matter of fact, they were not turned over to the Chapter 7 Trustee until May 13, 1989.

Some Courts have cited *In re Holtz*, 62 B.R. 782 (Bkrtcy.N.D.Iowa 1986) for the position that conversion of secured property to a Debtor's own use is not sufficient to deny a discharge pursuant to

§ 727(a)(2)(A). That case cites *In re McCloud,* 7 B.R. 819 (Bkrtcy.M.D.Tenn. 1980), and *In re Ellefson,* 54 B.R. 16 (Bkrtcy.W.D.Wis.1985), in which the Court held that the conversion of proceeds from the sale of grain secured by the bank does not bar the Debtor's general discharge under § 727(a)(2)(A).

The opposing view seems to be expressed in the case of *In re Devers,* 759 F.2d 751, decided in the Ninth Circuit Court of Appeals in 1985. The Ninth Circuit, in affirming the District Court and the Bankruptcy Court's denial of a general discharge, stated that the debtor-in-possession has a duty to protect and conserve property in his possession for the benefit of creditors. In this case, property that was mortgaged to the Bank of Sheridan was sold and the proceeds were not accounted for during the Chapter 11. It appears that the Ninth Circuit is stating that although property is validly mortgaged to a secured creditor, it is property of the estate, and it will be protected as an estate asset, and if the Debtor disposes of that asset without permission or Court Order, there could be a violation of § 727(a)(2)(B) if the other elements are proven. This reasoning could certainly be extended to a Chapter 7 debtor who states that he knows he has no right to certain accounts receivable after the conversion of a Chapter 11 to a Chapter 7 but, in spite of that, receives certain accounts receivable, uses them for his own benefit, and refuses to turn them over to the Trustee or the secured creditor. The Ninth Circuit in the *Devers* case went on to say that it is totally within the discretion of the Bankruptcy Court to find a particular violation of a Court Order so serious as to require denial of discharge. They explain that the bankruptcy statutes have a twofold purpose—first, to secure the equitable distribution of the bankrupt's estate among his creditors and, second, to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes. They cite several cases in support of that proposition. It seems to the undersigned that the key word is "honest debtor."

For the above stated reasons, it is the opinion of the Court that the Debtor/Defendant has violated § 727(a)(2)(B), and since there are no provisions in the Bankruptcy Code for petty violations as opposed to grand violations, the discharge must be denied.

### CONCLUSIONS OF LAW

Section 727(a)(2)(B) of the Bankruptcy Code states that the Debtor shall not receive a general discharge if the Debtor, with intent to hinder, delay, or defraud a creditor, or an officer of the estate charged with custody of property under this Title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(B) property of the estate, after the date of filing the petition.

Pursuant to Bankruptcy Rule 4005, which places the burden of proof on Plaintiff, and the other cases cited in the discussion set forth above, it is the Court's Opinion that the burden of proof in this matter is by a preponderance of evidence.

This Court has found that the Defendant has violated § 727(a)(2)(B) by receiving personal property, to wit money, that was property of the estate, and that he received said property within one year of the filing of the Petition, and that at the time of the transfer, he intended to hinder, delay, or defraud a creditor, to wit: the United States of America/Small Business Administration. The Court finds that Plaintiff has proven the act involved not only by a preponderance of evidence, which is the required standard, but by clear and convincing evidence should there be any doubt.

### JUDGMENT

Based upon the Findings of Fact, Conclusions of Law, and Discussion accompanying this Judgment, and the Court being fully advised in the premises, it is

ORDERED, ADJUDGED AND DECREED that the Defendant shall be denied

a discharge pursuant to Bankruptcy Code § 727(a)(2)(B).