In re Mostafa GOLCHIN, Debtor.

AMERICAN EXPRESS TRAVEL
RELATED SERVICES CO.,
INC., Plaintiff,

v.

Mostafa GOLCHIN, Defendant.

Bankruptcy No. 91–90124–JM(7).

United States Bankruptcy Court,
S.D. California.

Jan. 4, 1993.

---

Joe R. Sutter, Russel T. Little, San Diego, CA, and Gilbert B. Weisman, Becket & Watkins, Malvern, PA, for plaintiff.

Mostafa Golchin, pro se.

Steven A. Berkowitz, San Diego, CA, for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This is an action to except a creditor's claim from discharge pursuant to section 523(a)(2)(A). This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. section 157(a), (b)(2)(I), 1334(b) and 11 U.S.C. section 523(c). This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case. 28 U.S.C. § 157(b)(2)(I).

## FACTS

The debtor applied for two American Express cards in the month of April of 1986. Between August 31, 1990 and November 29, 1990, the Debtor made 35 charges for goods and services on one of the two cards totaling $7,685.67 and 37 charges for goods and services on the other card of $6,756.80 for total charges of $14,442.47. On November 29,

1. The debtor had a balance of $72.35 on one

1990, the Debtor filed an individual Chapter 7 bankruptcy petition. The schedules accompanying the bankruptcy petition listed $87,-574.00 of unsecured debt consisting of seven credit card obligations of approximately $51,-000.00, bank obligations of approximately $17,000.00 and approximately $19,000.00 of miscellaneous obligations.[1] On March 4, 1991 American Express filed this complaint to except its debt from discharge pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

## DISCUSSION

■ It is the contention of American Express that when the Debtor made the charges of $14,442.47, he did not have any intent to pay for them and that such conduct constitutes fraud within the meaning of section 523(a)(2) and, therefore, the American Express debt of $14,442.47 is non-dischargeable.

Section 523(a)(2)(A) provides that:

"A discharge under section ... 727 of this title does not discharge an individual debtor from any debt for money, property, (or) services ... to the extent obtained by false pretenses, a false representation, or actual fraud...."

Case law construing section 523(a)(2)(A) supports the plaintiff's contention that where "purchases are made through the use of a credit card with no intention at that time to repay the debt, that debt must be held to be nondischargeable pursuant to section 523(a)(2)(A)." *In re Dougherty,* 84 B.R. 653, 657 (9th Cir. BAP 1988), quoting *In re Faulk,* 69 B.R. 743, 755 (Bankr.N.D.Ind. 1986). The debtor concedes that if the charges were made with the intent not to pay for them such conduct constitutes fraud and the obligation incurred is a nondischargeable debt. However, he maintains that when he made the charges he intended to pay them.

■ Intent is a question of fact. *Gabellini v. Rega,* 724 F.2d 579, 581 (7th Cir.1984); *Carini v. Matera,* 592 F.2d 378, 380 (7th Cir.1979). Rarely will a person who is guilty of fraudulent conduct admit his guilt. Thus, "[d]irect proof of fraudulent intent is rarely

card and a zero balance on the other.

available." *In re Schlickman,* 6 B.R. 281, 282 (Bankr.D.Mass.1980). Fraudulent intent, therefore, may be established by circumstantial evidence or by inferences drawn from a course of conduct. *Farmers Co–Op v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982). *In re Ayala,* 107 B.R. 271, 274 (Bankr. E.D.Cal.1989). Prior to August 31, 1990, the debtor's balance on both of the American Express cards was less than $100.00. Beginning on August 31, 1990, he engaged in a spending spree using the cards on 72 separate occasions for charges of $14,442.47 with approximately $4,000.00 charged in the month in which the petition in bankruptcy was filed. The purchase of luxury goods and services accounted for approximately $13,-500.00 of the $14,442.47 charged. Approximately three months after beginning his spending spree the debtor filed the voluntary petition in bankruptcy.

The debtor did not have any income in the year 1989. His only income for the year 1990, the year in which he incurred the American Express debt, amounted to $20,-774.00, realized in July of 1990 from the sale of a partnership interest in a machine shop which he had acquired in 1987. The debtor testified that he did not know when he incurred the debt other than the $14,442.00 American Express obligation. However, the schedules indicate that all of the listed debt other than the American Express obligation was incurred prior to August 31, 1990.[2] The debtor's schedules also reveal that he had living expenses, exclusive of debt payment, of $4,950.00 per month. To meet his living expenses, he had to rely on gifts from his parents and money he borrowed from his sister. When he incurred the American Express obligation he was unemployed and did not have any funds available to pay his existing obligations let alone any new debt. Not only was the debtor unable to meet his consumer debt obligations, he was also unable to make court ordered support payments to his wife in the divorce action she instituted in May of 1990.[3]

▪ A debtor cannot ignore the reality of his financial state when he incurs debt and still claim to have the requisite good faith intent to repay the debt. "[W]here hopeless insolvency at the time of the purchases makes payment impossible, fraudulent intent may be inferred." *In re Boydston,* 520 F.2d 1098, 1101 (5th Cir.1975). See also *United Bank of Denver v. Kell,* 6 B.R. 695, 696 (Bankr.D.Colo.1980).

The debtor, however, maintains that when he made the charges he intended to pay them from prospective income. He testified that he was operating an international trading company, that he had negotiated currency exchange contracts, and intended to pay the charges incurred from the profits realized from the contracts but the contracts were cancelled and as a result thereof he was unable to do so. The debtor did not introduce any of the contracts in evidence nor did he offer any other evidence of their existence other than his self serving declaration. There is nothing in the record to support his contention that his trading company had contracts, existing or prospective, which would enable him to realize income to pay the obligations he had incurred.

The debtor testified that in 1987 his international trading company earned approximately $30,000.00 and that the company earned approximately the same amount in 1988. He also testified that in 1989 and 1990 he did not have any international trading contract income. The debtor had not earned in excess of $30,000.00 a year for any year since 1987. To meet his living expenses he had to rely upon gifts from his parents and money he borrowed from his sister. The debtor's contention that he intended to pay the American Express charges from the profits realized from the trading company is fanciful and unconvincing. The conduct of the debtor exhibits a pattern of self indulgence with complete lack of concern for his creditors. His conduct negates any ex-

---

**2.** It is actually immaterial to the question before the Court whether all of the debt exclusive of the American Express obligation was incurred before the American Express debt or concurrently with it.

**3.** In July of 1990, two months prior to incurring the American Express debt, the debtor filed a motion in the divorce proceeding to reduce his monthly support payments to his wife.

pressed intention to pay any of the obligations he incurred.

## CONCLUSION

The debtor was unemployed, hopelessly insolvent and without any source of income when he incurred the American Express debt. American Express has established that he incurred the American Express debt without any intent to pay it. Accordingly, the American Express debt of $14,442.47 is not dischargeable.

This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052. An appropriate order to be submitted by counsel for plaintiff within ten (10) days from the date of entry of this Opinion.