In re Gary Allen COOPER and Debra Ann Cooper, aka Debra Ann Schloesser, aka Debbie Mindling, d/b/a Pride Homes, Inc., d/b/a Re–Max Horizons, Inc., Debtors.

James K. AWEIDA, Appellee–Plaintiff,

v.

Gary Allen COOPER, Appellant–Defendant.

No. 91–K–1427.

Bankruptcy No. 90–13345 RJB.

Adv. No. 90–1508 RJB.

United States District Court, D. Colorado.

Feb. 5, 1993.

---

Daniel A. Hepner, Boulder, CO, for plaintiff/petitioner/appellant.

Gary Allen Cooper, Broomfield, CO, for defendant/respondent/appellee.

### MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This case is before me on Gary Cooper's ("debtor" or "Cooper") appeal from a decision of the bankruptcy court denying him discharge pursuant to 11 U.S.C. § 727(a)(2)(A). The bankruptcy court found that on at least three instances the debtor had transferred assets to his wife within one year of filing bankruptcy with intent to hinder, delay or defraud his creditors. In this appeal, the debtor argues that the evidence does not support a finding that he made the transfers with intent to hinder, delay or defraud; that the properties had no equity in them at the time of transfer; and that he could not have intended to hinder, delay or defraud his creditors because his wife, herself, was one of his creditors. Finding no error, I affirm.

### I. Facts and Procedural History

On March 10, 1989, James Aweida ("lender" or "Aweida") loaned the debtor $25,000 in order that the debtor might redeem an interest in certain real property. The note required the debtor to repay the principal sum with interest on May 10, 1989. The debtor did not, causing the lender to file suit in the Boulder district court. On September 21, 1989 judgment entered in the state case in an amount in excess of $30,-000. The debtor signed a confession of judgment and the lender executed a covenant not to enforce the judgment until after December 19, 1989.

During the three intervening months the debtor transferred or assigned to his wife his interest in his home, his interest in vacant real property, and his interest in a deed of trust ("Mitchell DOT") in a face amount of $183,743. The appropriate county clerk recorded these transfers on October 5, 1989, December 8, 1989 and November 15, 1989, respectively. After the covenant not to enforce expired, the lender began state court proceedings to determine if and how he might collect on the Boulder district court judgment. During those proceedings, the debtor made a number of inculpatory statements concerning the transfers to his wife, the contents and import of which I will discuss below. According to his brief, the debtor made the statements while recovering from a series of operations between February, 1989 and December, 1989, to repair a ruptured Achilles tendon, and while suicidally depressed.

The debtor filed a chapter 7 bankruptcy petition on August 14, 1990. The various schedules listed debts and judgments to other creditors in excess of $700,000. On November 30, 1990, the lender filed an adversary proceeding to determine the dischargeability of the debt owed to him. The bankruptcy court heard evidence on July 22, 1991 and issued a written opinion on July 30, 1991, denying the debtor discharge. This appeal followed.

### II. Discussion

#### A. Sufficiency of the Evidence

When I sit in review of a bankruptcy court decision, I must accept the

court's findings of fact, unless they are clearly erroneous. I must also give due regard to the bankruptcy court's first-hand opportunity and ability to judge and sort out the credibility of the witnesses. Fed. R.Bankr.P. 8013; *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir. 1986). A bankruptcy court's ultimate finding of fraudulent intent "will not be set aside unless clearly erroneous." *In re Calder*, 907 F.2d 953, 956 (10th Cir.1990). The determination of such a fraudulent intent is difficult because "ordinarily the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent is fraudulent." Id. at 955–56. Thus, it is proper to determine a debtor's fraudulent intent from circumstantial evidence or from inferences drawn from a course of conduct. *Farmers Co-op. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982).

■ Various courts have identified a number of circumstances evidencing actual intent to defraud under section 727(a)(2)(A). They include: 1) the lack or inadequacy of consideration; 2) the family, friendship or close associate relationship between the parties; 3) the retention of possession, benefit or use of the property in question; 4) the financial condition of the party sought to be charged both before and after the transaction in question; 5) the existence of a pattern or series of transactions after the onset of financial difficulties, or pendency or threat of suits by creditors; and 6) the general chronology of the events and transactions under inquiry. See, e.g., *In re Chastant*, 873 F.2d 89, 90 (5th Cir.1989).[1]

■ There is no doubt in my mind that the bankruptcy court's findings are well supported by the evidence. Indeed, this is one instance in which the debtor practically admitted that his intent was fraudulent. The lender called the debtor as an adverse witness. When the debtor denied that he transferred his interest in his residence to avoid attachment by creditors, the lender

impeached the debtor with the following statement from a January 25, 1990 deposition:

Q: Have you in the last 12 months had an ownership interest in that property?

A: I don't think so. I quitclaimed it to my wife in the first part of January—in the first part of '89.

Q: What was the reason for the quitclaim?

A: We had a partnership interest in downtown Denver called the Cross Apartments that the partners could not meet their obligations and it went into foreclosure; there is a $200,000 outstanding liability to the FDIC; and I began distributing money, the remaining assets, to my wife, to avoid any attachments from the federal government.

The debtor similarly disclaimed any intent to defraud when he transferred the vacant land to his wife. The lender then introduced the following deposition statement:

Q: Now does Deborah [sic] still have an ownership interest in Lot 18?

A: Yes.

Q: And if I recall correctly from your testimony on January 25, 1990, this quit claim came about as a result of some litigation that you are involved in?

A: It came about as a result of my trying to protect my wife's interest in property from—that she was entitled to due to monies that she had put in since we got married.

Q: Because of litigation pending against you individually?

A: My attorney suggested that I was in a high risk environment, and there was no need in jeopardizing her equity.

Finally, the following testimony came in against the debtor when he denied any fraudulent intent in the transfer of his interest in the Mitchell DOT:

Q: Why was this assignment made?

A: To protect her interest.

---

1. This list is by no means exhaustive. In *In re Calder*, the tenth circuit was persuaded of a debtor's fraudulent intent by his experience as a bankruptcy lawyer, by the number of omissions (four), and by partnership records which failed to show absolute and irrevocable divestment of the debtor's partnership interest. 907 F.2d at 956.

Q: Because you were involved in litigation?

A: Just as a suggestion from my attorney.

Beyond these candid statements, I also note that there was no evidence of any consideration from Mrs. Cooper to her husband for the various interests at issue; that the debtor continued to use, possess and enjoy the properties as if never transferred; that the transfers took place when the debtor was both involved in litigation and in deep debt to a number of creditors including the federal government; and that the debtor made the three disputed transfers during the three month period when the lender had agreed to stay execution on the judgment. Against this evidence I am hard-pressed to reach any different conclusion than the bankruptcy court did. The bankruptcy court's findings are supported by the record and are not clearly erroneous.

### 1. Suicidal Depression

■ The debtor claims that I should ignore the rule 69 statements with which he was impeached because they were made when he was suicidally depressed and recovering from a series of operations to repair a ruptured Achilles tendon. The debtor did not raise this issue before the bankruptcy court. Normally, I would not consider it for the first time on appeal. In deference, however, to the debtor's pro se status, I reviewed in toto the two deposition transcripts the lender used at trial for impeachment. I found only one reference to his Achilles tendon [2] and none to depression or suicidal ideation. In his answers the debtor gave reasonably precise answers to the questions posed to him, was able to recall many details of a variety of business opportunities in the past 10 years, and was able to marshal and gather a great many records and documents in a relatively short time without apparent difficulty. I

conclude there is no merit in the debtor's assertions.

### B. The Absence of Equity

The debtor claims that the properties and the DOT were all so heavily encumbered that he could not have intended to defraud, delay or hinder his creditors. While the premise may be true, the conclusion does not necessarily follow from it. A number of courts have suggested that where the debtor has no equity in the property at issue, discharge must be granted as a matter of law. See e.g., *In re Agnew*, 818 F.2d 1284 (7th Cir.1987) (husband's failure to disclose transfer of survivorship interest in real property held in a tenancy by the entirety did not prevent discharge where property was always exempt from claims of creditors and did not diminish property available to creditors); *In re MacDonald*, 50 B.R. 255 (Bankr.D.Mass.1985) (transfer of interest in tenancy by the entirety did not prevent discharge where husband's interest was totally encumbered by federal tax lien); *In re Jones*, 97 B.R. 36 (Bankr. D.Mont.1989) (Although the debtor admitted he created disputed trust with "the intent of trying to avoid or keeping [his ex-wife] from collecting her judgment against that property," discharge granted where debtor's full amount of equity could be claimed as homestead exemption, thus not decreasing or changing assets available to the creditors); *In re Harris*, 8 B.R. 88 (Bankr.M.D.Tenn.1980) (discharge granted where debtor had no equity in several head of cattle).

The ninth circuit has taken a different approach. In *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986), the court specifically rejected the argument that discharge should be granted merely because the disputed transfers did not injure the creditors. And see *Future Time, Inc. v. Yates*, 26 B.R. 1006 (M.D.Ga.), aff'd mem., 712 F.2d

---

**2.** In the debtor's January 27, 1990 state court deposition, the following question and answer appear at page 7, lines 10–13:

Q: And why haven't you been able to work?

A: I ruptured my Achilles' [sic] tendon in February of last year, and I've been in the hospital on three different occasions, I've been fairly well incapacitated.

1417 (11th Cir.1983) (refusing to reward the debtor for his mistake of fact).[3]

The ninth circuit also determined that "transferred" as used in section 727(a)(2)(A) means "transferred and remains transferred" on the filing date of the bankruptcy petition. In *Adeeb*, the debtor fraudulently transferred property out of his bankruptcy estate within one year of the filing of a petition, but then returned the property to the estate with full disclosure before filing the bankruptcy petition. The court determined that such facts should not prevent a discharge. It specifically found that a debtor who transfers assets fraudulently but recovers substantially all the assets before filing the bankruptcy petition may still be granted discharge. It found two reasons to support its interpretation.

> First, this reading encourages honest debtors to recover property they have transferred during the year preceding bankruptcy. [This facilitates] the equitable distribution of assets among creditors by ensuring that the trustee has possession of all of the debtor's assets. Second, this reading permits the honest debtor to undo his mistakes and receive his discharge.

787 F.2d at 1345. And see, *In re Davis*, 911 F.2d 560 (11th Cir.1990) (Following *Future Time*, but rejecting *Adeeb's* "recovery pre-petition" exception because it was "not free to create by interpretation an exception in a statute which is plain on its face." 911 F.2d at 562).

 I disagree that the absence of equity in section 727(a)(2)(A) property, standing alone, is sufficient to grant a debtor discharge. Rather, it is only one of many factors a court may look at in determining a debtor's fraudulent intent, which must remain the central focus of the inquiry. Here, the bankruptcy court specifically

found that the Mitchell DOT had value and equity, both during and after the transfer. Furthermore, under the *Adeeb* and *Future Time* cases, the debtor made no effort to recover the transferred assets before or even during[4] the bankruptcy proceedings. He should not now be rewarded for his wrongdoing.

### C. The Debtor's Wife as Creditor

 In his last argument the debtor asserts that there were no fraudulent transfers because his wife was also one of his creditors. I disagree. As the ninth circuit put it:

> Our inquiry under section 727(a)(2)(A) is whether Adeeb intended to hinder or delay a creditor. If he did, he had the intent penalized by the statute notwithstanding any other motivation he may have had for the transfer.... Further, the statute requires only that the debtor make the transfer with intent to hinder, delay, or defraud "a creditor." There is no requirement that the debtor intend to hinder all of his creditors.

*In re Adeeb*, 787 F.2d at 1343. And see *In re Steinberg*, 4 B.R. 593, 597 (Bankr. D.Mass.1980) (collecting cases). At a minimum, the debtor here fraudulently intended to delay and hinder both the federal government and the lender. "This is both literally and in spirit inconsistent with the purposes of the Code and is an act proscribed by 11 U.S.C. § 727(a)(2)(A)." 4 B.R. at 597.

The judgment of the bankruptcy court is accordingly AFFIRMED.

---

**3.** "When appellant transferred his interest in the residence to his wife, he obviously intended to shield what he thought was valuable property from the claims of his creditors. To hold now that there occurred no transfer of property with the intent to hinder creditors merely because the debts on the residence exceed its estimated fair market value would be to reward appellant for his wrongdoing, which the court refuses to do." 26 B.R. at 1008-09.

**4.** The seventh circuit has suggested that a distinction should be made between a debtor who reveals and recovers pre-petition assets and one whose transfers are revealed and recovered only through the actions of the trustee and the court. *In re Smiley*, 864 F.2d 562, 566 (7th Cir.1989).